Appellees, the surviving wife and minor children of Alphonse Levy, deceased, brought this suit against the appellant to recover damages for the death of said Alphonse Levy, which is alleged to have been caused by the negligence of the appellant. *Page 108 
The petition alleges in substance that Alphonse Levy, while in the discharge of his duties as customs inspector at the wharf of the Galveston Wharf Company in the city of Galveston, was crushed between two cars on a track of appellant's railroad situated upon said wharf; that said cars had been placed by appellant upon said track to be loaded with railroad iron and had remained stationary for several hours; that when placed upon the track for the purpose of being loaded an opening had been left between them for the purpose of enabling those engaged in loading them or in inspecting the iron placed thereon to pass from one side of said track to the other; that attached to one of said cars there was a number of empty box cars extending in a western direction for a distance of about 200 feet; that just as deceased, in the discharge of his duties, was in the act of passing through the open space between said cars before mentioned the defendant without giving any warning suddenly put the cars to the west of said open space in motion and thereby caught and crushed deceased between said moving cars and the car east of said open space, and inflicted injuries upon him which resulted in his death; that said cars were put in motion by an engine which came down said track from the west without giving any signals or warnings. The negligence alleged consisted in the failure of appellant's employes operating said engine to blow the whistle and ring the bell thereon as required by the statutes of the State and the ordinances of the city of Galveston; in the failure of said employes, in view of the noise and confusion existing upon said wharf and incident to the work of unloading railroad iron from a ship and reloading same upon cars and the consequent difficulty of hearing the noise of a moving train, to send some person ahead of said train to notify those engaged about said track of its approach, and the further failure to have a man stationed as lookout on the end of said cars before same were moved to warn those who might be crossing the track.
The defendant answered by general demurrer and special exceptions, and by general denial and a plea of contributory negligence on the part of the said Levy. This plea was as follows: "That if the said Alphonse Levy received the injuries in said petition set forth, then said injuries were caused by his own recklessness and contributory negligence, and without which said injuries would not have been received. That prior to and just before the time said Alphonse Levy was injured there were two cars standing on the railroad track very close together, with hardly sufficient space to permit the passage of the said Levy. That the said Levy went between the said cars knowing, or by the exercise of ordinary care, or the exercise of the slightest care, could have known, that said cars were then being switched; yet he, the said Levy, not for any business that he was engaged, but for his own private convenience and comfort, went between them and received the injuries from which he died, and which act and conduct was gross negligence on the part of the said Levy, and that his injuries were caused without *Page 109 
any negligence on the part of this defendant or its servants or employes.
"That before and at the time said Alphonse Levy was caught between said cars, the engine and cars which backed against them were being moved very slowly, and said train and cars were being handled and operated by defendant and its servants in a careful and prudent manner.
"That the said Alphonse Levy not only could have known, by the exercise of the slightest care, before he went between said cars, that said other cars were approaching or backing, but did actually know, before he went between them, such to be the fact, and that the cars between which he was injured were then to be switched or moved.
"That said defendant, although operating said cars and train carefully, did not know and could not have known that the said Alphonse Levy had placed himself in a dangerous condition where he was injured."
The trial in the court below by a jury resulted in a verdict and judgment in favor of plaintiffs for the aggregate sum of $4875. The evidence in the record both upon the issue of the negligence of the appellant and the contributory negligence of the deceased is sharply conflicting, but the evidence introduced by plaintiff is sufficient to sustain the allegations of the petition that appellant's employes operating said engine failed to ring its bell before putting the engine in motion or during the time it was moving and before it struck the deceased; that at the time he was struck the deceased was passing through the open space between said cars which had been left open for the purpose of allowing such passage, and that the failure to ring said bell and thus warn deceased of the movement of the cars was the proximate cause of his death.
Article 453 of the ordinances of the city of Galveston is as follows: "It shall be the duty of the engineer, or other person in charge of a locomotive or engine, to cause the engine bell to be rung continually, and the whistle to be sounded at every street crossing whilst the engine and cars are in motion within the corporate limits; and any person who shall violate any of the provisions of this article shall be deemed guilty of an offense, and shall be fined by the recorder in any sum not less than five nor more than one hundred dollars." This ordinance was introduced in evidence by the appellees.
Twentieth Street, which is one of the public streets of the city of Galveston, abuts against the plank wharf of the Galveston Wharf Company just west of the string of cars which extended west from the open space in which deceased was caught and killed as before stated. Just before attaching itself to the said cars the engine with four cars in front of it was west of said street, and the undisputed evidence shows that when it moved the cars in front of it across said street for the purpose of attaching them to the cars on the east of the street the engine whistle was not blown. This movement of the cars was for the *Page 110 
purpose of removing three cars which were on the track east of the open space in which deceased was killed, and had been loaded with railroad iron, and replacing same with empty cars to receive the remainder of said iron. This switching of the cars was undertaken at the request of the foreman in charge of the work of loading said railroad iron upon cars for the purpose of shipment, which request had been made to appellant's agent some time before the engine was sent to do said switching. At the time the movement of the cars which struck deceased was made railroad iron was being unloaded from a ship and thrown upon the wharf, and the falling of said iron upon the plank wharf created a great deal of noise. This noise was not continuous but occurred at intervals of a few minutes. Before starting across Twentieth Street to make said switch the engineer sent a brakeman down said wharf to the cars which were to be removed to notify those engaged in loading said cars that a switch was to be made, and to see that everything was clear. This brakeman did notify the foreman and others engaged in the work of loading said cars that the switch was about to be made, and as soon as said workmen had gotten off the cars and removed the appliance used by them in loading same the brakeman signaled the engineer to go ahead with the movement of the train, and in obedience to said signals the movement was made which resulted in the death of the deceased. The evidence as to whether deceased heard, or could have heard, the notice given to the brakeman was conflicting, and the finding of the jury that he did not hear such notification given, and did not know and could not have known by the use of ordinary care at the time he went between said cars that said switch was about to be made, is sustained by the evidence.
The evidence introduced by the defendant raised the issue of contributory negligence on the part of Levy in each of the particulars mentioned in the answer above set out.
The first assignment presented in appellant's brief complains of the ruling of the trial court in not sustaining defendant's objection to the introduction in evidence by the plaintiffs of the ordinance of the city of Galveston above set out. The objection urged to the introduction of this evidence was that the ordinance only required that the bell of the engine be rung and the whistle blown at street crossings, and the uncontradicted evidence in this case showing that the deceased was not killed at or near a street crossing, said ordinance was immaterial and irrelevant.
Neither of the assumptions of fact on which this assignment is based can be sustained and the assignment is therefore without merit. As we construe the ordinance it requires that the engine bell be rung continuously while the engine is in motion within the corporate limits of the city of Galveston. This construction of the ordinance renders it admissible upon the issue of negligence on the part of appellant in failing to ring the engine bell regardless of whether the deceased was killed at or near a street crossing. We are further of opinion that *Page 111 
the undisputed evidence shows that the public highway near which deceased was killed, and across which appellant moved its cars just before deceased was struck, was a part or prolongation of the street of the city of Galveston known and designated as Twentieth Street. All of the witnesses who testified as to how the movement of the cars was made said that the engine was on the west side of Twentieth Street when it started to make the switch. The engineer and fireman speak of the Twentieth Street crossing, and the latter says that the reason he did not blow the whistle for said crossing was because he had stationed a brakeman there to keep a lookout and warn persons who might be using the street. It was further shown that the street at this place was used by the public as a thoroughfare. The only testimony tending to contradict all of this evidence was the statement of one of the witnesses for the appellant to the effect that ground at said crossing had been made by the wharf company by solid filling. This fact could not destroy the public character of the highway and render inapplicable the ordinances of the city passed for the purpose of protecting the public in the use of such highway.
The next assignment assails the ruling of the trial court in sustaining the objection of plaintiffs to testimony offered by defendant to show that the city of Galveston recognized the ground upon which the crossing in question was situated as the property of the wharf company and had never improved or taken charge of that portion of Twentieth Street. We think this testimony was immaterial and therefore was properly excluded. It matters not who owned the land upon which the street or highway was situated or whether the city had ever improved that portion of said street. It was in fact a public highway, so used by the public and recognized as such by the appellant's employes who operated its trains, and as long as the wharf company permitted it to be so used it was a part of Twentieth Street in said city in the sense in which that term is used in said ordinance. While considering the questions raised under the assignments above referred to we will also dispose of the assignments which assail the charge of the court in instructing the jury that the failure of appellant's employes operating said engine to ring the bell thereon continuously while said engine was in motion would be negligence under the ordinance above set out, and that if they believed from the evidence that said bell was not rung and that the failure to ring same was the proximate cause of the death of Alphonse Levy, he not being guilty of contributory negligence, they should find for the plaintiff; and further that if the jury believed that the whistle of said engine was not blown at the crossing of Twentieth Street and the failure to blow same was negligence and proximately caused the death of Levy, without any contributory negligence on his part, they should find for the plaintiffs. Under our construction of the ordinance it was the duty of the operatives of said engine to ring the bell thereon continuously while the engine was in motion within the limits of the city of Galveston. *Page 112 
It follows that the failure to ring said bell being contrary to the statute would be negligence per se, and the court did not err in so instructing the jury.
The court did not instruct the jury, as contended by appellant, that the failure to blow the whistle at the crossing of Twentieth Street would be negligence per se, but expressly left the issue of negligence vel non arising from the failure to blow the whistle to the determination of the jury. While the statutory signals required to be given by railroads at public crossings for the purpose of using them, and the failure to give such signals would be negligence per se only in respect to such persons, such failure might under some circumstances be negligence in respect to persons other than those above mentioned. In the case we are considering appellant's employes knew that they were going to push a number of box cars into a public place where a number of persons were at work and were passing to and fro across its track. Just before reaching the place at which these persons were at work the train crossed a public street at which the statute required the whistle of the engine to be blown. There was much noise and confusion at the place where the deceased was engaged incident to the character of the work in progress, and the ordinary noise made by a moving train might not be readily heard and recognized by those near the place at which the work was being done. Appellant's employes operating said train were, under the evidence, charged with knowledge of these facts, and were further charged with notice of the fact that the persons upon or about said track at or near the place said work was in progress had no reason to expect that the train would cross the street and move on to said place without giving the signal required by the statute. If the whistle had been blown at the crossing of Twentieth Street the deceased would have heard it and would have been thereby notified of the approach of the engine and in all reasonable probability he would not have been struck by the train. Under these facts it can not be said, as a matter of law, that ordinary care on the part of the operatives of said train did not require them to blow the whistle before crossing Twentieth Street, and the trial court properly submitted to the jury the question of whether the failure to blow the whistle was negligence. It does not follow that because the failure to blow the whistle is negligence per se only as to those persons for whose benefit the statute was enacted, that such failure can not under any circumstances be negligence as to any other persons. Railway Co. v. Gray, 65 Tex. 32; International G.N. Ry. Co. v. Woodward, 26 Texas Civ. App. 389[26 Tex. Civ. App. 389], 63 S.W. Rep., 1051; Missouri K. T. Ry. Co. v. Taff, 7 Texas Ct. Rep., 384; Gulf C. S.F. Ry. Co. v. Matthews, 28 Texas Civ. App. 92[28 Tex. Civ. App. 92], 66 S.W. Rep., 588; Gulf C. 
S.F. Ry. Co. v. Calvert, 11 Texas Civ. App. 297[11 Tex. Civ. App. 297], 32 S.W. Rep., 246.
In the third paragraph of his charge the trial judge instructed the jury that "Alphonse Levy, deceased, in the discharge of his official *Page 113 
duties had the right to be upon the cars and track of the defendant company, but the law imposed upon him the use and exercise of ordinary care, as hereinbefore defined, to prevent injury to himself."
Under appropriate assignments of error this charge is assailed upon the ground that there is no evidence presenting the issue of whether the said Levy at the time he went upon appellant's track and received the injuries which resulted in his death was in the discharge of his duties. The evidence shows that Levy was an inspector of customs in the employment of the government, and it was his duty to count and inspect the railroad irons which were being loaded on the cars for the purpose of shipment. While the evidence shows that the three cars which were about to be switched had been loaded and inspected and a manifest therefor given by Levy before the switch was attempted to be made, there is also evidence to the effect that another car on the track east of the loaded cars had not been inspected by Levy, and that he had started to cross the track in the open space in which he was caught and killed for the purpose of going to said car and inspecting the iron that had been placed thereon. This evidence clearly raised the issue of whether Levy was in the discharge of his official duties when he went upon defendant's track, and the objections made to the charge can not be sustained.
The eleventh assignment of error complains of the following paragraph of the charge:
"1. The court erred in charging the jury that if they believed from the evidence that the employes of defendant company failed to have a lookout to discover and prevent injury to persons on the track, and that the said failure was negligence, and the proximate cause of Alphonse Levy's death, and that his death would not have occurred but for said employes' negligence in that respect, then the jury should find a verdict for the plaintiffs."
The objections urged to this charge are (1) that it presents an issue not raised by the evidence, in that the uncontradicted evidence shows that one of the brakemen who was engaged in making said switch went upon and along the track where Levy was killed a short time before the switch was made, for the purpose of ascertaining if the persons engaged about said track were out of danger, and that the switch was not attempted to be made until said brakeman had performed the duty assigned to him and had signaled the engineer that the track was clear; and (2) that by said charge the jury are instructed that it was the duty of appellant to have had a person standing on the end of the car which struck the deceased for the purpose of keeping a lookout, when the uncontradicted evidence shows that the car which struck Levy had been stationary for hours before it was pushed against him and was not connected with a moving train until just at the moment it struck deceased, and therefore no duty devolved upon the appellant to have a man stationed as a lookout upon the end of said car. *Page 114 
We do not think the sending of a brakeman down the track to see that the same was clear before the switch was made relieved the operatives of the engine from the duty of keeping a reasonable lookout while the engine and train were in motion for the purpose of preventing injury to any person who might go upon the track. The charge complained of does no more than submit to the jury the issue of whether the operatives of the train failed to keep a reasonable lookout to prevent injury to persons who might be upon the track, and whether such failure, if any, was negligence, and the jury must have so understood the charge. There is nothing in the language used which would have led the jury to believe that it was the duty of the defendant to have a man stationed on the end of the car which struck the deceased for the purpose of keeping a lookout. Gulf C. S.F. Ry. Co. v. Smith, 87 Tex. 357
[87 Tex. 357]; Texas P. Ry. Co. v. Watkins, 88 Tex. 24
[88 Tex. 24]; Texas P. Ry. Co. v. Staggs, 90 Tex. 458
[90 Tex. 458]; International G.N. Ry. Co. v. Lee, 34 S.W. Rep., 161; Railway Co. v. Jacobson, 28 Texas Civ. App. 150[28 Tex. Civ. App. 150], 66 S.W. Rep., 1111.
The thirty-second assignment of error complains of the refusal of the trial court to give the jury special charge number 16 requested by the defendant, said charge being as follows:
"You are instructed that if you believe from the evidence that Alphonse Levy went upon the track between the cars for the purpose of urinating, and that a person of ordinary prudence, situated as he was at the time, would not have done so, and that if he had not done so he would not have been injured, then you will find your verdict in favor of the defendant, no matter whether the defendant was negligent in any and all of the particulars alleged in the petition or not."
The court in the main charge gave the jury a correct definition of contributory negligence and further instructed them as follows: "If the jury believe from the evidence that Alphonse Levy by being between the cars at the time of his death was guilty of contributory negligence, your verdict should be for the defendant. * * * If the jury believe from the evidence that Alphonse Levy knew, or by the exercise of ordinary care and caution could have known, that a switch was about to be made and nevertheless went upon the track where he was killed, your verdict should be for the defendant."
At the request of defendant the following special charge was also given: "Even though you may believe from the evidence that the defendant railroad company failed to blow the whistle, or ring the bell, at what is described in the evidence as the Twentieth Street crossing, or failed to have a man stationed as lookout on the end of the backing train of cars, yet if you believe from the evidence that a man of ordinary care and prudence, situated as the deceased Alphonse Levy was, and under the circumstances then existing, would not have gone between said cars, or if you believe that an ordinarily prudent person, under the same or similar circumstances, by the exercise of such faculties as such a person would have exercised under the same or similar *Page 115 
circumstances, would have known that going between said cars was hazardous, and would not have attempted it, then you will find for the defendant."
These charges sufficiently presented to the jury the issue of contributory negligence raised by the pleadings and evidence and it was therefore not error to refuse requested instruction number 16 above set out. The purpose for which Levy went upon appellant's track could not of itself affect the question of his contributory negligence. If he were a trespasser upon the track the duty owed him by the appellant would not be the same as that which it would owe to one rightfully upon its track, and the purpose for which he went upon the track might be considered in determining the appellant's duty to him, but the requested instruction only informed the jury that they might consider the purpose for which Levy went upon the track in determining the question of his contributory negligence, when, as before stated, it could in no way affect that question.
We deem it unnecessary to consider the remaining assignments of error in detail. After a careful examination of the record we have reached the conclusion that the evidence sustains the verdict of the jury and that the charge of the trial judge is a clear and comprehensive presentation of the law applicable to the facts in evidence. The numerous special charges requested by the defendant which contain correct statements of the law applicable to the facts were covered by the main charge given by the court and no error is shown in the refusal of any of said charges. We are of opinion that the judgment of the court below should be affirmed and it is so ordered.
Affirmed.
Writ of error refused. *Page 116