## MISSOURI–KANSAS–TEXAS R. CO. OF TEXAS v. McLAIN et al.
### No. 3018.

·Court of Civil Appeals of Texas. El Paso.
July 12, 1934.

Rehearing Denied July 30, 1934.

Touchstone, Wight, Gormley & Price, of Dallas (on rehearing), Charles C. Huff, G. H. Penland, and J. M. Chambers, all of Dallas, for appellant.

Mack L. Vickrey and Carden, Starling, Carden & Hemphill, all of Dallas, for appellees.

WALTHALL, Justice.

Mrs. Annie E. McLain, surviving widow of Charles M. McLain, as plaintiff, brought this

suit for herself and on behalf of two surviving children of her family, naming them, against defendant, Missouri-Kansas-Texas Railroad Company of Texas, to recover damages which she alleges she and said children sustained by reason of the alleged negligent acts of defendant proximately causing the death of her said husband. The damages sued for were the sum of $12,000, and plaintiff prayed that such sum as she 'may recover be apportioned between plaintiff and her said children.

A better understanding of the issues pleaded and submitted to and found by the jury will be had by a brief statement of some of the uncontroverted facts which occurred immediately preceding the death of Charles M. McLain on account of whose death this suit is brought.

His death occurred on the early morning of January 11, 1931. Prior to his death the deceased had been employed during the night of his death, and on the occasion of his death he was returning from his place of work to or in the direction of his residence in the city of Dallas, and was walking southerly on Greenville avenue. When deceased reached the place where the defendant's railroad track crosses Greenville avenue, defendant's freight train, consisting of an engine and some thirty-six cars, had stopped and some cars of said freight train stood across and blocked the crossing of Greenville avenue. While the deceased was on Greenville avenue at said railroad crossing and while the said freight train was still standing across said crossing, a Mr. Wilmeth, driving an automobile on Greenville avenue, approached said railroad crossing on the side where the deceased was and in undertaking to make a quick and sudden stop his automobile skidded on the wet paved street and came in contact with one of the cars of the freight train standing on the said street. Plaintiff's allegation is that in skidding, and in the collision of the automobile with the standing freight car, the automobile struck the deceased with such force and violence and in such manner as to catch deceased between the said automobile and the standing freight car, and crushed deceased's body between the automobile and the freight car and thereby produced his death. No person saw the deceased at the time he was killed, and not until after the collision of the automobile with the freight car was it known that deceased was injured, when his body was discovered on the paved street in its position, condition, and at the place shown by the evidence.

The issues between plaintiff and the defendant railroad company are sufficiently indicated by the special charge of the trial court in submitting the case to the jury.

The issues submitted and the jury's findings thereon are substantially as follows:

All the issues were submitted to be found on a preponderance of the evidence.

(1) Mr. Wilmeth lost control of his automobile as he approached the railway track.

(2) After Wilmeth lost control of his automobile it came in contact with Mr. McLain.

(3) At the time Wilmeth lost control of his automobile McLain was on either the paved or unpaved portion of the public highway with a view of crossing to the other side of the railway track when it was clear.

(4) The train in question was stopped across the highway prior to the time Wilmeth first discovered it.

(5 and 6) The railway employees responsible therefor were negligent in stopping said train across the highway on said occasion, and said negligence was a proximate cause of the death of McLain.

(7) After the train was stopped across the highway there was time before Wilmeth lost control of his automobile to remove the obstructing cars from the highway by cutting the crossing.

(8 and 9) The train crew were negligent in failing to remove the obstructing cars from the highway by cutting the crossing before Wilmeth lost control of his automobile, and such negligence was a proximate cause of the death of McLain.

(10 and 11) The defendant, acting through its train crew, was negligent in failing to have some one of their number with a lantern on the north side of the track at said crossing at the time Wilmeth approached the track, so as thereby to attempt to warn the traveling public which might approach the track from the north of the presence of said cars across said highway, and such negligence was a proximate cause of the death of McLain.

(12 and 13) Defendant was negligent in failing to install, prior to the date of McLain's death, a light at such crossing to aid travelers from the north in observing whether a train obstructed the highway, and such negligence was a proximate cause of the death of McLain.

(14 and 14–A) The death of McLain was an unavoidable accident as to Wilmeth, but not as to defendant.

(15 and 16) Wilmeth, as he approached the crossing in question, under the conditions and circumstances then and there existing, as shown by the evidence, drove at such rate of speed that he was unable to stop his automobile and avoid striking the train in question, after same became visible to him by the headlights of his automobile and driving at such rate of speed was not negligence.

(17) Conditional and not answered.

(18 and 19) Deceased did not fail to use that degree of care for his own safety that a reasonably prudent person under like or similar circumstances would have used, if any, to discover the approach of the automobile, and to avoid being struck by the automobile.

(21 and 22) The crossing in question was willfully blocked by the train in question by standing thereon for a period of more than five minutes next before it was struck by the automobile of Wilmeth, and such blocking by the train was a proximate cause of the death of McLain.

(23) The jury found for plaintiff in the sum of $12,000.

The trial court recited in the judgment that it appearing from the undisputed evidence that plaintiff, Mrs. McLain, had heretofore received from cross-defendant Wilmeth the sum of $2,000, same should be credited upon the verdict; and that it further appeared that Wilmeth had filed herein a motion for judgment in his favor, the court thereupon entered judgment for plaintiff and against defendant railroad company in the sum of $10,000.

We might state here that Mrs. McLain presents a cross-assignment of error in allowing the $2,000 previously paid in her settlement with Wilmeth as a credit upon the amount assessed by the jury. The court overruled the defendant's, railroad company's, amended motion for a new trial, and the defendant duly prosecutes this appeal.

### Opinion.

Appellant, by its first two propositions, challenges the sufficiency of the evidence to raise the issue whether deceased was killed by being caught between the automobile and appellant's train, as alleged by appellee, and because of the insufficiency of the evidence to show such fact the court should have given appellees' requested peremptory charge in its favor.

▮ There was no eyewitness to what caused the death of McLain.

The evidence is lengthy, and we will state briefly a few facts and extracts from the evidence. The death of McLain occurred before daylight and about 6 o'clock on the morning of January 11, 1932. There was a heavy mist and fog at the time. The place where the body was first discovered was on the street paving of Greenville avenue at the railroad crossing, on the north side of the main track, and at the time when the freight train was blocking the crossing.

At the time Wilmeth and his wife, Mrs. Velma Wilmeth, approached the crossing from the north in an automobile, driving at about 20 miles an hour, when about from 40 to 75 feet from the main track, Wilmeth discovered the train on the street crossing and put on the emergency brakes, when the automobile skidded and the left-hand rear end of the automobile hit the box car. When the auto struck the box car it tore the door loose and threw Wilmeth out to the left between the auto and the train. After asking his wife if she was hurt, Wilmeth started to go around the auto to her side (she was still in the auto) and as he walked around back of the auto his foot struck against his spare tire on the pavement; he stopped to pick it up, and then noticed the body of McLain on the highway. McLain was then dead, was lying on his left side, almost behind the auto, between it and the box car; his feet about two feet from the railroad rails. He turned the body over on its back; saw blood about him. Another witness was driving a truck about 60 or 70 yards behind Wilmeth's auto when it reached the railroad crossing and saw it "whirl around in the road" and stopped his truck. Witness saw the body of the dead man lying on the pavement; said his feet were under the edge of the box car and his head away on the north side; there was blood on his face and head. The rear brakeman of the obstructing train testified: The train had 36 cars; examined the cars in the train near there to see what had happened to any of them; saw the bend in one of the stirrups of the box car, the car that was taken out of the crossing, the last car of the cut that went out. Witness testified to the wrecked condition of the Wilmeth auto, and its location with reference to the street crossing, after the wreck; it was off the paving. Witness Hamilton testified: At the time of deceased's death deceased was working for the state in the highway department north of the crossing in question, and usually went down Greenville avenue beyond the north of the crossing in going to his home. Witness Hamilton said: He "saw him (deceased) pass the filling station that morning ten or fifteen minutes after the train had reached the crossing, and that about ten min-

utes after deceased passed by the filling station Mr. Laney came up to the filling station to phone for an ambulance because of the accident in question." Witness went to the scene of the accident and saw the deceased. In answer to the question: "What condition was he (the deceased) in?" witness answered: "He was bloody all over and his face all mashed up."

There is no evidence in the record to indicate that deceased met his death in any way other than in connection with the skidding of the Wilmeth automobile with the standing freight train. There is no evidence tending to show that any vehicle other than the Wilmeth auto had been at the railroad crossing at any time while deceased was there, or that the train had moved after stopping and before deceased was found dead. We think the evidence was sufficient to justify the submission of the issue as to the cause of the death of deceased as alleged in the petition. The propositions are overruled.

■■ Appellant submits that the skidding of the automobile and striking of the deceased, if it did strike him, was not such a natural and probable consequence of the blocking of the crossing, that it ought to have been foreseen, and hence was not a proximate result of the alleged negligence of appellant.

The proposition seems to be that in blocking the crossing, under all of the facts and circumstances, appellant ought not to be charged with foreseeing that an automobile would probably come along, and, in undertaking to avoid a collision with the train, would skid and thereby probably cause the injury, or some similar injury. The blocking of the crossing was the only cause suggested by the evidence of the necessity for a sudden stopping of the automobile; the skidding was the result of the effort to stop. The proposition, we think, presents more questions of fact to be decided by the jury than of law.

The point discussed is whether there is a causal connection between the blocking of the street and the skidding of the automobile.

The statute forbids the willful blocking of the highway for more than five minutes at any one time. Where it is shown that the statute has been violated, negligence follows per se, and the question then is, Was the blocking of the street the, or a, proximate cause of the skidding and injury complained of? San Antonio & A. P. Ry. Co. v. Behne et ux. (Tex. Com. App.) 231 S. W. 354. It is true, as contended by appellant, that foreseeableness or anticipation of injury is a nec-

essary element of proximate cause. That element of fact was included by the trial court in submitting the issue to the jury. In the San Antonio & A. P. Ry. Co. v. Behne Case, supra, Judge McClendon announces the rule as above stated, and refers to Seale v. Ry., 65 Tex. 274, 57 Am. Rep. 602, and Texas & P. Ry. v. Bigham, 90 Tex. 223, 38 S. W. 162.

■ Proximate cause presents a question of fact to be passed upon by the jury. Missouri, K. & T. Ry. Co. v. Jones, 13 Tex. Civ. App. 376, 35 S. W. 322. We think we may not say, as a matter of law, and contrary to the jury's finding, that in blocking the highway, under all of the surrounding circumstances attending at that time, the darkness, fog, wet and slippery condition of the highway, with nothing to warn the public of the standing train, appellant would not be expected to anticipate just what did happen, or something similar, the sudden stop or skidding of an approaching automobile to avoid a collision with the obstructing cars.

■ The rule of duty to anticipate that injury might result from a common-law act of negligence, that is, a failure to exercise ordinary care, is the same as negligence per se. As said by Judge McClendon in San Antonio & A. P. Ry. Co. v. Behne, supra, the difference between the two classes of wrongful acts (negligence per se, and failure to exercise ordinary care) rests solely in the method of determining whether they be wrongful; one is made wrongful by law, and the other is wrongful when a failure to exercise ordinary care is shown.

■ Appellant submits that the length of time the highway was blocked by the train while standing still or moving was immaterial to appellees' asserted right of action, and the charge that "the defendant and its agents and servants did willfully obstruct the said crossing" for such period as to be guilty of a criminal offense, was calculated to prejudice appellant in the minds of the jury, and should have been eliminated from the petition before it was read to the jury.

The petition charges a violation of article 787 of the Penal Code of this state. The appellee had the right to plead the acts of appellant which the statute denounces, and which, in civil parlance, are considered negligence. The statute makes the act of obstructing the street an offense when "willfully obstructed for more than five minutes at any one time." In submitting the special charge the court defined the term "willfully,"

as used in the charge, as meaning "the doing of an act knowingly, or without reasonable grounds for believing the act to be lawful."

The evidence tended to show and the jury found that the train blocked the street for more than five minutes at one time at the time and place of the accident. Mr. Duncan, the engineer, testified that he knew at that time that the law made it an offense to willfully block the crossing for more than five minutes, and knew that he pulled the train across the highway and stopped with the train obstructing the highway. Testified he made two stops, one just before reaching the crossing; said: "I didn't want to get on the crossing and have to cut it"; didn't want to block the highway; the second stop put the train on the crossing.

We think no reversible error is shown submitting the issue, nor in defining the term "willfully." Loyd v. State, 19 Tex. App. 325.

■ Appellant complains of the submission of issue No. 5, whether the railway employees of appellant were negligent in stopping the train across the highway on said occasion, and in submitting issue No. 8, failing to cut the crossing before Wilmeth lost control of his automobile, and in submitting issue No. 10, failure to have some one with a lantern on the north side of the track at the crossing to warn the traveling public of the presence of the train; and, in submitting issue No. 12, in failing to install a light at such crossing.

We have carefully considered each of the objections and have concluded reversible error is not shown.

■ Without restating, the pleading stated the time of the accident, the condition of the weather (cloudy, rainy), the condition of the street (wet and slippery), a street much used at time of accident by vehicles and pedestrians, and the evidence, without contradiction, fully sustained the allegations and the burdens. The specific act of negligence was the act of stopping the train across the highway under the circumstances stated which was certain, definite, and a specific act of negligence submitted.

Should appellee be entitled to recover on any of the negligent acts other than those last referred to, the case should not be reversed.

It was a question of fact, we think, for the jury, whether the appellant railroad company, in the light of all the attending circumstances, should have anticipated that a pedestrian from the north side of the railroad track would be obliged to stop near the obstructing train, waiting for it to clear the crossing, and that while so waiting an automobile would approach the crossing at a lawful rate of speed, and its driver not discover the obstructing train until near the track, so that when he applied his brakes on the wet pavement the auto would skid and in skidding strike such waiting pedestrian and kill or injure him. (Missouri, K. & T. Ry. Co. v. Long (Tex. Com. App.) 299 S. W. 854; Id. (Tex. Civ. App.) 23 S.W.(2d) 401, on rehearing and cases referred to. Dallas Railway Co. v. Speer (Tex. Civ. App.) 299 S. W. 507, 510; Boyles v. McClure (Tex. Com. App.) 243 S. W. 1080; Houston Belt & Terminal Ry. Co. v. O'Leary et al. (Tex. Civ. App.) 136 S. W. 601 (writ refused); Mexican Nat. Ry. Co. v. Mussette, 86 Tex. 719, 26 S. W. 1075, 24 L. R. A. 642; O'Connor v. Andrews, 81 Tex. 28, 16 S. W. 628; Gonzales v. City of Galveston, 84 Tex. 3, 19 S. W. 284, 31 Am. St. Rep. 17; Shippers Compress v. Davidson, 35 Tex. Civ. App. 558, 80 S. W. 1032. Also Paul v. Atlantic Coast Line R. Co., 170 N. C. 230, 87 S. E. 66, L. R. A. 1916B, 1079, in which the Supreme Court of North Carolina held that the railroad company in blocking the crossing could have reasonably foreseen and anticipated that some injury might result therefrom so as to make such blocking a proximate cause of an injury to the driver who had been obliged to turn down the street and go parallel to the railroad track, and whose horse became frightened. Miller v. Atlantic Coast Line, 140 S. C. 123, 138 S. E. 675, blocking a crossing case.

We have considered appellant's propositions not here specifically discussed, and have concluded they present no reversible error, and are overruled.

■ In appellees' cross-assignment it is submitted the trial court erred in rendering judgment for $2,000 less than the amount of the verdict; that amount having been paid to plaintiff by the insurance company carrying liability insurance upon Wilmeth's car. It is submitted that no deduction should have been made from the amount of the verdict.

The material contractual portion of the contract between the insurance company and Wilmeth in the matter of Wilmeth's liability in this suit is to the effect that in consideration of the payment of $2,000 plaintiffs covenant not to sue Wilmeth nor the insurance company and agree that they will save Wilmeth and the insurance company harmless from any judgment the railway company may recover against them by reason of McLain's death. No party to the contract makes any admission of liability; nor is there any

specific assertion of liability by plaintiff. Defendant's answer contains a cross-petition against Wilmeth.

The jury found Wilmeth not negligent in driving his automobile, the negligent act submitted as to Wilmeth; the jury found also that the death of McLain was an unavoidable accident as to Wilmeth.

Plaintiffs' contention is, in effect, that defendant railroad company obtained no right under this contract, the amount paid by Wilmeth to plaintiff not having been paid nor received as damages, nor a benefit accruing from the death of the deceased; that Wilmeth, not being a tort-feasor, the railroad company had no rights against him and was in no way benefited, concerned, or affected by the contract to which it was not a party, parted with no consideration, and for whose benefit it was not made. Plaintiffs refer us to Gattegno v. The Parisian (Tex. Com. App.) 53 S.W.(2d) 1005.

The jury found that $12,000 would reasonably compensate the plaintiff for the present value of such pecuniary aid that she had a reasonable expectation of receiving from her deceased husband had he not been killed. Plaintiff received $2,000 from Wilmeth, a part of the present value of the pecuniary aid plaintiff had a reasonable expectation of receiving in the same cause.

To now give her judgment for $12,000 and judgment for the additional $2,000 would, we think, in effect, give plaintiff judgment for a double recovery for the same wrong, which the court holds in the Gattegno-The Parisian Case, supra, would be wrong.

We think the court was not in error in crediting the $12,000 with the $2,000.

The case is in all things affirmed.