### TEXAS CITY TERMINAL RY. CO. v. ALLEN et al.

#### No. 11627.

Court of Civil Appeals of Texas. Galveston.
May 18, 1944.

Rehearing Denied July 6, 1944.

Armstrong, Cranford, Barker & Bedford, of Galveston, for appellant.

Henry W. Flagg, of Galveston, and Allen, Helm & Jones, of Houston (J. Edwin Smith, of Houston, of counsel), for appellees.

MONTEITH, Chief Justice.

This is an appeal in an action brought by appellees, Evelyn Allen and Mrs. M. E. Allen, to recover from appellant, Texas City Terminal Railway Company, damages growing out of the death of Ike Allen, the husband of Evelyn Allen and the son of Mrs. M. E. Allen, as a result of a collision which occurred on the Galveston-Texas City Highway between an automobile driven by the deceased and a train of appellant's tank cars which were being backed into a tank farm over a spur track across the highway.

Appellees alleged that appellant's failure to maintain automatic signal or lighting devices, or to have a watchman at said crossing to warn travelers of the movement of tank cars over the crossing, or to set flares, illuminate said crossing, or have lighting devices on the sides of said cars reasonably visible to travelers on the highway, constituted negligence and that such negligence was the proximate cause of the collision which resulted in the death of Ike Allen.

Appellant alleged various acts of omission on the part of the deceased which it alleged amounted to contributory negligence.

The case was tried before a jury who, in answer to special issues submitted, found that at the time of said collision said crossing was an extrahazardous nighttime crossing, and that the extrahazardous character of said crossing was known, or should have been known, to the appellant. It was found that appellant's failure to maintain an automatic signal or lighting device, or to have a watchman at said crossing to warn travelers of the movement of tank cars over the crossing, or to set out flares, illuminate said crossing, or have lighting devices on the sides of said cars reasonably visible, con-

stituted negligence and that such negligence was a proximate cause of said collision and the death of Ike Allen. Based on the answers of said special issues judgment was rendered against appellant and in favor of appellees.

This action arose out of a collision which occurred between ten and eleven o'clock on the night of August 4, 1943, on the Galveston-Texas City Highway, between an automobile being driven in an easterly direction toward Texas City by the deceased, Ike Allen, accompanied by his wife and another couple, and a train of 23 tank cars which was being slowly backed across said highway over a spur track into a tank farm adjoining the highway on the north. The highway over which the Allen automobile was traveling was a paved concrete highway 20 feet in width on a 100-foot right of way. From a point approximately 850 feet from the spur track where the accident occurred the highway ran straight and practically level to the crossing, with no obstruction on the highway which would have prevented the driver of an automobile on the highway from seeing the crossing in question. At a distance of 560.5 feet from the crossing the straight section of the highway passed through a cut in an earthen dike which crossed the highway at this point at about right angles. From this point there was an unobstructed view of said crossing and the train south of the crossing. At a distance of approximately 442 feet from said crossing on the right hand shoulder of the highway there was a state highway railroad-crossing sign with mirror reflector-buttons giving warning of a railroad crossing. At a distance of 340.5 feet from said crossing there was a state highway sign warning traffic of the presence of a side road entering the highway just beyond the railroad crossing. At the railroad crossing itself there was a standard railroad crossing sign, consisting of cross-arms with white background with "Railroad Crossing" printed in black thereon.

The record shows that the deceased, Ike Allen, had been working in the vicinity of the accident and that he was familiar with the crossing. He had passed over the highway and spur track earlier in the day on his way to Galveston.

The night on which the accident occurred was dark and cloudy. No moon was shining but there was no mist. Prior to the collision the train of tank cars which was being backed into the tank farm had stopped,

near the south edge of the highway and the train foreman with a lighted lantern had stationed himself in the center of the highway. He testified that when the gate to the tank farm was opened he saw no traffic approaching on the highway from either direction and that he then gave the signal for the train to proceed across the highway into the tank farm. He testified that the whistle was blown and the bell was rung before starting and that as the first car crossed the highway he swung upon it.

A brakeman, Keith Johnson, testified that he was on top of the first car as it passed over the middle of the highway and that he saw the headlights of the automobile driven by the deceased shining through the cut in the dike and coming toward the train and that the car upon which he was standing had passed through the gate into the tank farm, a distance of 60 or 70 feet, when the automobile struck the third car of the train. Ike Allen was instantly killed, his automobile was badly damaged and the running board of the tank car was badly shattered and splintered. The train was estimated to have been moving at the rate of 3 miles per hour at the time of the collision and the automobile was estimated to have been running at the rate of 25 to 50 miles per hour.

E. R. Wilson, a disinterested witness, who was traveling in another car at a distance estimated at approximately 100 feet behind the Allen car, testified that he did not know that a train was on the crossing until he came to 15 or 20 feet of the train and that he was then able to see the train only after he had turned a spot light on it and had focused it in the direction of the train. He testified that his attention was first attracted to the situation when the tail light of the Allen car went out.

 While it is the uniformly recognized rule in this state that, where a railroad crossing is more than ordinarily dangerous to night time travelers, it is incumbent upon the railroad company to take more than ordinary measures to apprise travelers approaching the crossing that such dangers exist (McMahan v. Texas & N. O. R. Co., 138 Tex. 626, 161 S.W.2d 70), our courts under facts similar in all material respects to the facts in the instant case, have held that the operatives of trains could properly assume that persons travelling upon the highway would exercise the care incumbent upon them in the hazards of the night to keep their cars under control so as to be able to avoid colliding with objects which should have been disclosed by their headlights. Texas & N. O. R. Co. v. Stratton, Tex.Civ.App., 74 S.W.2d 746, writ of error refused.

In the cases of Texas & N. O. R. Co. v. Stratton, Tex.Civ.App., 74 S.W.2d 741, and Id., 74 S.W.2d 746, (in both of which cases writs of error were refused), the San Antonio Court of Civil Appeals held, under a state of facts not materially different from the facts in the instant case and in which the jury had found that the negligence of the railroad company was the proximate cause of the injuries complained of, that the negligence of the railroad company was not, as a matter of law, the cause of the injuries complained of, and, notwithstanding the verdict of the jury, rendered judgment that plaintiffs take nothing.

In the case of Texas & N. O. R. Co. v. Compton, 135 Tex. 7, 136 S.W.2d 1113, 1115, the precise question involved in this case was before the Supreme Court under an almost identical state of facts. That case also involved a collision on the Galveston-Texas City highway between an automobile and a slowly moving freight train on a dark and foggy night when the visibility was poor. As in the instant case, the highway ran over a flat prairie country and the track crossed the highway at right angles. The Supreme Court in its opinion, following the principles announced in the Stratton cases, said:

"Under the authorities it must be held as a matter of law, that the negligence of the railroad company in this regard was not the proximate cause of the death of Charles Compton. This precise question was before the Court of Civil Appeals at San Antonio in the case of Texas & N. O. R. Co. v. Stratton, 74 S.W.2d 741. In that case there was a jury finding that such negligence was the proximate cause of the injuries complained of, but notwithstanding the verdict judgment was rendered on appeal that the plaintiff take nothing. It was held that, as a matter of law, the absence of the warning sign was not the proximate cause of the injuries. The court reasoned that if travelers on the highway could not see the moving cars ahead of them, they could not have seen the sign. The same holding was made by the same court in two other cases, growing out of the same accident. Texas & N. O. R. Co. v. Stratton, Tex.Civ.App., 74 S.W.2d 746;

Texas & N. O. R. Co. v. Berry, Tex.Civ. App., 74 S.W.2d 750. Applications for writs of error were prosecuted in all three of these cases and all were refused. We have inspected these applications and find that the question here under review was squarely presented to this court for decision. By refusing the applications in those cases this court put its stamp of approval upon such holding. We perceive no ground of distinction between those cases and the instant case. So nearly are the facts the same that to hold that an issue of fact was raised in this case would be to overrule the decisions in those cases."

The principles laid down in the Stratton and Berry cases were followed in Kypher v. Texas & P. R. Co., Tex.Civ.App., 88 S.W.2d 528.

The appellees contend that the instant case must be distinguished from the Stratton and Berry and Compton cases, for the reason that they introduced evidence on the trial of the cause to support the jury findings that appellant was negligent in failing to take extra precautions to warn deceased of the presence of the train across the crossing. They base this contention largely on the testimony of E. R. Wilson, who testified that at the time of the collision he was approximately 100 feet behind the Allen car and that he could not see the train over the crossing, and upon authorities which, we think, are clearly distinguishable in that in each of the cases cited there existed an obstruction which would prevent an ordinarily prudent driver from observing a train in sufficient time to have avoided a collision, or upon the existence of facts which might have created an illusion in the mind of the driver of the car that the track across the highway, although known to the driver, was not occupied by a train. In the case of St. Louis, B. & M. Co. v. Brack, Tex. Civ.App., 102 S.W.2d 261, it was held that, in view of the fact that two light cars were on either side of the highway with a dark car across the highway, the evidence raised the suggestion of an illusion which authorized the court to submit the question of the railroad's negligence to the jury. In the case of Missouri, Kansas & Texas Ry. Co. v. Long, Tex.Civ.App., 23 S.W.2d 401, relied upon by appellees, the railroad track where it was crossed by the highway was in a depression which might have deceived a traveler ignorant of the fact that there was a railroad track at the bottom of the incline into believing that the high-way was free of any obstacle in his path. In the case of Beaumont, S. L. & W. R. Co. v. Richmond, Tex.Civ.App., 78 S.W.2d 232, relied upon by appellees, a stationary flat car which presented only an eight-inch surface to obstruct the view of the traveler to objects beyond the track raised an issue as to whether or not it was in itself ample warning to the traveler.

 In the instant case it is undisputed that for a distance of at least 560 feet the highway leading to the spur crossing at which the accident occurred was a level, straight, concrete highway, with no obstructions to the view of the crossing or to the view of the train to the south side of the crossing. Under the Holdings in the Stratton and Compton cases, supra, we must hold that, as a matter of law, the negligence of the railroad company was not the proximate cause of the death of Ike Allen.

The judgment of the trial court is reversed, and since the case was fully developed in that court, judgment is here rendered in favor of appellant.

Reversed and rendered.