**TEXAS CITY TERMINAL RAILWAY COMPANY, Appellant,**

v.

**Norman Eric BLAHA et al., Appellees.**

**No. 16122.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Nov. 8, 1973.

Rehearing Denied Dec. 6, 1973.

Bedford, Lambdin & Schwab, Griffith D. Lambdin, Galveston, for appellant.

Helm, Jones & Pletcher, David H. Burrow, Houston, for appellee Norman Eric Blaha.

Chilton Bryan, Lowell T. Cage, Houston, for appellee A–1 Taxi Co.

COLEMAN, Chief Justice.

This suit resulted from a nighttime collision between a taxicab and a railroad flatcar at a point where the railroad crossed a private road owned by the railway company. The plaintiff was a passenger in the taxicab. A judgment for the plaintiff was rendered after a jury trial. The taxi company was not found to be negligent and the plaintiff has not appealed from the judgment.

The principal questions debated on appeal concern the status of the plaintiff as licensee, or an invitee, on the premises of the defendant Railway Company, and the duty of the Railway Company to warn the plaintiff of the presence of the flatcar on the crossing where both the railroad track and the street were owned by the Railway Company. We conclude that the plaintiff occupied the status of an invitee and that the Railway Company, as to him, had a duty to use ordinary care to provide a safe crossing or to give adequate warning of the dangerous condition existing at the crossing. However we are of the opinion that the presence of the flatcar on the crossing was itself adequate warning in the absence of a finding that the crossing was extrahazardous.

The plaintiff was employed by the American Oil Company to work as a member of the crew of an oil tanker. The Texas City Terminal Railway Company owns a 350 or 400 acre tract of land extending to the water front in Texas City. It is an old, well established industrial development, in which a number of businesses are operated on leased sites. The water front is improved with some twenty-four docks for ships and barges, most of which are leased to private concerns. The industrial sites and the docks are served by spur tracks and private roads. The roads were built and are maintained by the Rail-way Company for the use of its tenants and their employees and customers, as well as for its own use. There are some twelve places where the private roads cross the spur tracks.

The oil tanker on which plaintiff was employed reached the dock leased by American Oil Company on February 14, 1967. After plaintiff completed his work he went into town by taxicab to do some shopping. At about 9:30 p. m. he engaged a taxi to take him back to the ship. The taxi driver was familiar with the industrial area and entered the defendant's premises on Dock Road. He was familiar with the road and the various railway crossings. As one enters the industrial area on Dock Road he travels in an easterly direction for some distance making several turns. The road turns sharply to the south and then is straight for several hundred yards before reaching the intersection at which the collision occurred. This intersection is unmarked and unlighted.

■ The plaintiff was an employee of American Oil Company, a tenant of the Railway Company. When the plaintiff entered the private road for the purpose of returning to his place of employment, he occupied the status of a business visitor as regards American Oil Company. The road was furnished by the Railway Company for the use of business visitors of its tenants. Plaintiff was an invitee rather than a licensee. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609 (1950); Houston Belt & Terminal Ry. Co. v. Rogers, 44 S. W.2d 420 (Tex.Civ.App.—Galveston 1931, writ dism'd).

The owner or occupier of property must exercise ordinary care either to warn or to protect his invitee against conditions of the premises which would involve an unreasonable risk to his safety, the danger of which would not be open or obvious to a person exercising ordinary care. He is under no duty to take further action for his protection if he has provided an adequate warn-

ing of the dangerous condition. Delhi-Taylor Oil Corp. v. Henry, 416 S.W.2d 390 (Tex.1967).

■ The occupant's liability for injuries sustained by the invitee rests on the owner's superior knowledge of the danger, and he is not to be held liable where the danger is as obvious to the one as to the other. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.1963).

■ It is settled law that the presence of a railway car on a crossing is ordinarily a sufficient warning of the danger to be encountered at the crossing, even at night when conditions make visibility poor. Texas & N. O. R. Co. v. Stratton, 74 S. W.2d 741 (Tex.Civ.App.—San Antonio 1934, writ ref.); Texas City Terminal Ry. Co. v. Allen, 181 S.W.2d 727 (Tex.Civ.App. —Galveston 1944, writ ref.).

From Texas & N. O. R. Co. v. Compton, 135 Tex. 7, 136 S.W.2d 1113 (1940), we quote:

"Another ground relied upon was the failure of the railroad company to use extraordinary means to give warning, such as to equip its freight cars with lights and have same burning at night, to equip its crossing with signal bells or lights or to have a watchman stationed thereat. Negligence cannot be based upon such omissions, for the crossing was not extrahazardous and therefore no duty was cast upon the railroad company to observe these extraordinary precautions. It would be difficult to conceive of a railroad crossing at which the hazards would be more obvious than at this one."

A railroad car on a crossing is an open and obvious condition. The cases hold that when the night is dark and cloudy, or fog is present, these conditions are known to the motorist and it is incumbent on the motorist to keep his automobile under such control that it can be stopped within his range of vision, and that the operators of a

train can properly assume "that persons traveling upon the highway would exercise the care incumbent upon them in the hazards of the night to keep their cars under control so as to be able to avoid colliding with objects which should have been disclosed by their headlights." Texas City Terminal Ry. Co. v. Allen, supra.

■ A railroad crossing may be more than ordinarily dangerous in which event the railway company is charged with a duty to warn the motorist if it knows or is charged with knowledge of the hidden danger.

In Karr v. Panhandle & Santa Fe Ry. Co., 153 Tex. 25, 262 S.W.2d 925 (1953), the court said:

"These cases clearly hold that an extra-hazardous crossing may arise (1) from permanent conditions, or (2) from temporary conditions which make the crossing extra-hazardous at the time the injury occurs.

"But in the latter situation the substantial conditions rendering a crossing temporarily extra-hazardous must be due to some act or omission of the railway employees, because only under those circumstances could the defendant know or fairly be charged with knowledge that the crossing is temporarily extra-hazardous. . . ."

In answer to issues submitted the jury found that the Railway Company was negligent: (1) failing to provide a flagman at the crossing in question; (2) failing to keep a proper lookout; (3) failing to sound the train's whistle immediately before the collision; (4) failing to ring the bell on the engine immediately before the collision; (5) allowing the railway flatcar to block Dock Road for such a period of time; (6) failing to have reflectors on the side of the flatcar; (7) failing to have a street light installed at the crossing in question.

No issue was submitted to determine whether the crossing was extra-hazardous although the plaintiff had requested such an issue. He has not assigned error to this action of the court. There is no evidence of any act or omission of the railway employees causing the crossing to be temporarily extra-hazardous. There is evidence of a tool shed in the vicinity which at some point along the road might make the engine more difficult to see, but it would not interfere with the motorist's view of the flatcar which was obstructing the road. There is evidence that there was a light some one hundred feet toward the dock area, and that lights were present all along the dock area. There is no testimony that these lights troubled the taxi driver or created an illusion. The shell road was dusty and it was constructed by the railway company. The taxi driver testified that he was watching an approaching car, and that he first saw the flatcar when he passed this car. This was the first crossing accident known to the company. There is no evidence of anything else of a permanent nature which would prevent the occupant of a car on the road from seeing the flatcar on the crossing. A railroad car standing on a railroad crossing does not cause that crossing to be deemed extra-hazardous. Missouri-Kansas-Texas Railroad Company v. Bernhardt, 418 S.W.2d 368 (Tex.Civ.App.—Austin 1967, writ ref., n. r. e.).

No issue of an extra-hazardous crossing was raised by the evidence. The railway company objected to the issues submitted on the ground that it owed no duty in the absence of a finding that the crossing was extra-hazardous. This objection was well taken and the trial court erred in submitting each of the issues asking about the negligence of the railway company, and also erred in overruling its motion to disregard the jury finding. The fact that the road was not a public road and that the crossing on which the accident happened was owned by the railway company does not alter the situation except to charge the company with knowledge of the dusty road. The legal principles herein discussed are applicable in this case as well as in the case of a railroad crossing a public highway.

The judgment is reversed in part and judgment is here rendered that Norman Eric Blaha take nothing from the defendant, Texas City Terminal Railway Company. The judgment that Norman Eric Blaha take nothing from the defendant, A–1 Taxi Company, is not disturbed.

EVANS, J., dissenting.

EVANS, Justice (dissenting).

I am convinced that the facts of this case distinguish it from those cases which hold that the mere presence of a railway car on the crossing constitutes in itself a warning of the danger. In this case the flatcar was empty and was of such a length that its wheels bridged the entire road and were off of the crossing. A driver approaching the crossing could see past the low beam of the flatcar and could see lights on down the road at the dock in the distance. The color of the flatcar in question was maroon when first painted; both the flatcar and the engine were dark in color. The engine was off to the side of the crossing and partially obscured. The photographic exhibits indicate elevated pipes and other background structures which the jury might have found would tend to blur a driver's vision of ground objects in the vicinity of the crossing. The situation was viewed by an approaching driver may be summarized by the following testimony of the investigating officer:

"Q So as far as the travel portion of Dock Road, where vehicular traffic would be traveling, such as a taxicab, there were no wheels anywhere on that flatcar?

"A No, sir.

"Q All he had to view there with respect to this particular flatcar was—

would be the side of the flatcar looking something like the edge of that table over there, in perspective?

"A.  Right.

"Q  Realizing that the table is narrower, is that correct?

"A  Right, sir.

"Q  I believe you testified that there wasn't anything on the flatcar to prevent a driver, proceeding in the direction of the taxicab, from seeing on beyond and seeing dock lights and whatever was on down here?  (indicates)

"A  Right, sir."

As the taxicab driver approached the crossing, but still several hundred yards away, another car turned onto the road and was approaching the taxicab on its left.  The taxicab driver testified:

"Question:  I take it, when you were approaching this you were looking straight ahead, were you not, sir, you weren't looking off were you?

"Answer:  I wasn't looking to the right or left only to the car I was meeting when he turned the corner."

He also testified:

"Question:  Okay.  As you came down Dock Road and approached this train crossing did you see anything past the crossing?

"Answer:  There is a loading dock over there with a big street light or same as a street light that was shining.

"Question:  You could see past the crossing?

"Answer:  See over the cars."

The taxicab driver had his car lights on dim until he passed the approaching automobile and then turned them on bright again; he first saw the flatcar after he had met the other automobile and was approximately four car lengths from the railroad tracks when he first applied his brakes.  He was going about 25 miles an hour when he first saw the flatcar blocking his path.  He got on his brakes pretty hard and this made his wheels slide on the shell road; his cab "nosed" under the flatcar.  The taxicab driver's testimony with respect to his first seeing the flatcar and as to his vision being obscured by dust stirred up by the other car is as follows:

"Question:  You didn't see him before?  Where were you when you first saw the railroad flatcar?

"Answer:  I would say about four cars from it when it saw it in all that dust that all of this other car had stirred up."

A case very close in point is Beaumont, S. L. & W. R. Co. v. Richmond, 78 S.W. 2d 232 (Tex.Civ.App.—Beaumont 1935, writ dism'd).  In that case the driver's view of the engine and its lights was obscured by houses and other obstructions until he was within 200 feet of the crossing, no flagman or brakeman was out on the track at the crossing and the train had been standing there for at least five minutes.  The crossing was obstructed by a low type flatcar which presented a barrier to the driver's view across the highway of about eight inches.  The night was dark and hazy with a little mist of rain and as the driver approached the crossing he could see the lights of Sour Lake in front of him and over the top of the flatcar.  The witness testified that when a flatcar was standing on the crossing it was pretty hard to see because of lights of Sour Lake and automobiles coming down the highway.  In affirming the trial court's judgment, based on the jury's findings that the conditions surrounding the crossing rendered it more than ordinarily dangerous as a nighttime crossing and that the railroad's failure to provide signal devices constituted negligence which was a proximate cause of the accident, the Beaumont court, through Chief Justice Walker, said:

"It is our conclusion that the facts and circumstances of this case were sufficient to carry to the jury the issue of

negligence quoted above. When appellant stopped its train across the crossing, blocking it with a flat car, it knew that it was blocking an important and highly traveled highway, that one approaching the crossing would see a barrier across the highway only about eight inches wide, and that over the flat car he could see the lights of Sour Lake and over the flat car could also see the railroad crossing sign and the switch light. Prescott v. Hines, 114 S.C. 262, 103 S.E. 543, by the Supreme Court of South Carolina, presents a case where the defendant blocked a street in the city of Columbia with cars that had no light upon them nor near them, or any guard or watchman to give warning; the night was foggy and smoky, which made the cars standing across the street dark and obscured. It was held that the facts of that case were sufficient to take the issue of negligence to the jury . . . ."

The court in the Richmond case further held that the issue of contributory negligence was a matter of fact for the jury. On this point the court said:

"It is true that appellee, for a long distance, had an unobstructed view of the crossing covered by appellee's freight train, but Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S.W. 139, is authority for the proposition that, though one may have an unobstructed view of the crossing, yet the 'distractions' of the moment may make the issue of contributory negligence a fact issue for the jury; this record is full of 'distractions,' as shown by the statement above made. On appellee's right as he approached the crossing his view of the engine and that part of the train to the right of the crossing was obscured; the lights shining above the flat car created the illusion that the crossing was not occupied; appellee could see over the top of the flat car, the switch lights and the crossing sign. . . . "

To similar effect on this point is Gulf, C. & S. F. Ry. Co. v. Picard, 147 S.W.2d 303 (writ dism'd, judg. corr.) (Tex.Civ. App.—Beaumont 1940).

In the case at bar the driver could see the lights from the docks down the road beyond the narrow beam of the flat car and as he neared the crossing his vision was momentarily obscured by the dust and lights of the passing car. In my opinion, the fact that the narrow beam of the empty flat car extended across the road should not be considered, under the facts of this case, as being so "open and obvious" as to constitute, in itself, a sufficient warning, as a matter of law, of the dangerous condition it presented.

There are a multitude of cases dealing with the question of whether a blocked highway crossing is an extra-hazardous crossing. Most of the cases pertinent to this inquiry are cited and reviewed in Karr v. Panhandle & S. F. Ry. Co., 153 Tex. 25, 262 S.W.2d 925 (1953), and in Fort Worth & Denver Ry. Co. v. Williams, 375 S.W.2d 279 (Tex.Sup.1964). Those cases clearly show that an extra-hazardous crossing may arise from either permanent or temporary conditions, and that the determination depends upon the facts of each case. Stated otherwise, a railroad crossing may present no danger at one time and at another time may be extra-hazardous. The determination is one of fact unless reasonable minds cannot differ. Fort Worth & Denver Ry. Co. v. Williams, supra; Tisdale v. Panhandle & Santa Fe Ry. Co. (Tex.Com.App. 1921), 228 S.W. 133.

However, in my opinion the judgment in this case does not depend upon a finding that the crossing was extra-hazardous. There was testimony from which the jury could have concluded that the crossing had been blocked by the train for more than five minutes before the collision. The train engineer admitted that he saw the taxicab's headlights when it was about three blocks away from the crossing and

that he saw dust boiling up in the area of the crossing which he thought was caused by another vehicle. There is also testimony that the road is used by cars traversing the area and that it was a common occurrence for taxicabs to take passengers on the road to and from the dock area. The dock area was described as a congested industrial area. The jury found that the blocking of the road by the flat car for the period of time it was blocked was negligence; that such negligence was a proximate cause of the collision; that the railway company crew failed to keep a proper lookout and that such failure was a proximate cause of the occurrence. A finding of extra-hazardous crossing is necessary only where there is sought to be imposed upon the railway a duty to take extraordinary means to warn approaching travelers such as flagmen, automatic signaling devices and crossing gates. Such a finding is not essential to recovery upon findings of negligence and proximate cause. In St. Louis B. & M. Ry. Co. v. Brack, 102 S.W. 2d 261 (Tex.Civ.App.—San Antonio 1936, n. w. h.), an automobile driver, Brack, died as a result of a nighttime collision with a low, black oil tank car left standing on the crossing. To either side of the tank car was a large yellow or light colored box car which gave the impression that the crossing was open. The jury found that the blocking of the crossing for more than five minutes by the standing car was negligence and a proximate cause of the collision, and the trial court rendered judgment for the plaintiff on the verdict. The court of civil appeals reversed and remanded, on rehearing, due to the form of the court's instruction on proximate cause, but on the point in question, at page 267 said:

"Defendant, however, asserts that the unlawful blocking of a public road does not amount to negligence per se, unless the unlawful act be shown to be 'willful,' and seems to contend that the motive behind the conduct of the actor in such a case must be shown or at least considered along with the unlawful act before such act or conduct can be held to be negligence per se.

"Defendant contends, furthermore, that the unlawful blocking of the crossing here in question cannot possibly be held to be a proximate cause of the collision, for the reason that the time or extent of such unlawful blocking was not known to the deceased; that unless the deceased knew that the road had been blocked by defendant, in excess of five minutes prior to or at the time of the injury, then such negligence and unlawful act of defendant could not be held to be a proximate cause of the injury of deceased.

"We do not find this to be the correct rule or test in such a case as here under consideration. . . ."

In a similar case, the Texas Supreme Court in Missouri-Kansas-Texas Railway Co. of Texas v. McLain, 133 Tex. 484, 126 S.W.2d 474 (1939), setting aside prior opinion in Tex.Com.App., 105 S.W.2d 206, and affirming the court of civil appeals' judgment (74 S.W.2d 166), upheld the trial court's judgment based upon the jury's findings that the railroad was negligent in stopping its train on the highway crossing and that such negligence was a proximate cause of the occurrence. In that case, the court of civil appeals, 74 S.W.2d, at p. 170, said:

"Without restating, the pleading stated the time of the accident, the condition of the weather (cloudy, rainy), the condition of the street (wet and slippery), a street much used at time of accident by vehicles and pedestrians, and the evidence, without contradiction, fully sustained the allegations and the burdens. The specific act of negligence was the act of stopping the train across the highway under the circumstances stated which was certain, definite, and a specific act of negligence submitted."

Appellant contends there was no duty on its part because the road in question was a

"private" road on its own property. I cannot agree. Missouri-Kansas-Texas Ry. Co. v. Neuhoff Bros., 297 S.W.2d 316 (Tex. Civ.App.—Dallas 1956, writ ref'd, n. r. e.); Panhandle & Santa Fe Ry. Co. v. Sutton, 125 Tex. 401, 81 S.W.2d 1005 (1933). The road in question was undisputedly a well traveled thoroughfare used by trucks and automobiles having business in the dock area; that it was *used* as a public road can hardly be disputed. On this point the investigating officer testified:

"Q Now, you, as a city policeman, go down and investigate accidents on this Dock Road which goes across Texas City Terminal property because that's open to the public. The public can drive through there, isn't that true? That's the reason you go down and investigate it?

"A That's correct, yes, sir."

And appellant's own witness, the Assistant to its General Manager, testified:

"Q And cannot a taxi company, at any time they chose as long as they are on taxicab business and doing business with respect to the people that have business operations in that area, Monsanto, Amoco, Union Carbide, can they go in there and use that road?

"A Yes, sir, they can.

"Q And that sign does not prohibit them from going in there, does it?

"A It does not prohibit them no, sir.

"Q It is not a closed road with respect to them, is it?

"A No, it is not closed.

"Q Or with respect to that portion of the public or the people that have business down there, it is open to them, is it not, sir?

"A That is correct.

"Q Now, how many companies operate down in that area? I have mentioned three. Are there any others?

"A Marathon, Texas City Refining, Carbide, Monsanto, American Oil, and Amoco. Yes, generally."

In Missouri Pacific Railway Co. v. Lee, 70 Tex. 496, 7 S.W. 857 (1888), the court said:

"The purpose of the statutes, or the principal ones, imposing duties upon railroad companies in running their trains across the public roads, was to protect human life. That necessity would attach to the crossing of every road in fact public, and where the extent of travel made it a duty on the part of the railway trains to look after the safety of those using the road as a highway. We cannot attach to the word 'public', in the amended act, any other meaning than as including all public roads, whether in law or in fact. We think, where the crossing is public, and that fact known to the railroad company, that the duty of carefulness arises. . . ."

See also Galveston, H. & R. Co. v. Levy, 35 Tex.Civ.App. 107, 79 S.W. 879 (1904, writ refused); Texarkana & Ft. S. R. Co. v. Frugia, 43 Tex.Civ.App. 48, 95 S.W. 563 (Tex.Civ.App., 1906, writ ref'd). Furthermore, as an invitee of the appellant to use the road in question, appellee was entitled to at least the same degree of care as he might have expected in the use of a crossing over a dedicated public road. See Waco, B. T. & S. R. Co. v. Simmons, 292 S.W. 636 (Tex.Civ.App.—Galveston 1927, writ dism'd). The fact that the train in question may have been involved in switching operations on its own land should not relieve it of its duty to exercise care in the particulars in which the jury found it was negligent. Missouri-Kansas-Texas R. Co. v. Neuhoff Bros., supra.

I would affirm the trial court's judgment.