**ST. LOUIS, B. & M. RY. CO. v. BRACK et al.**

**No. 9741.**

Court of Civil Appeals of Texas. San Antonio.

Nov. 18, 1936.

Rehearing Granted Feb. 3, 1937.

Davenport & Ransome, of Brownsville, for appellant.

Gordon Griffin, of McAllen, for appellees.

BOBBITT, Justice.

This is a death action, brought by Mrs. Loula Brack, as surviving widow of O. M. Brack, deceased, for herself and for the use and benefit of her three minor children, against the St. Louis, Brownsville & Mexico Railway Company, and against L. W. Baldwin and Guy A. Thompson, trustees of said corporation, as a result of a collision between an automobile driven by the deceased and a freight train of the defendant, the St. Louis, Brownsville & Mexico Railway Company, while said train was standing still on the crossing of its tracks, where they intersect McColl road, which is a paved public road, running at right angles to State Highway No. 12, and intersecting said state highway about a mile and a half east of the city of McAllen, Tex. The said railroad tracks and State Highway No. 12 are adjoining, and run parallel, east and west, at such crossing; the state highway being to the south of the railroad tracks. The McColl road, however, is not a designated state highway, and it is not a through road at such crossing. The collision occurred about midnight, November 18, 1932, on a clear night. The moon was shining, and there were no obstructions on either side of the road near the crossing in question. The deceased was alone in his car, and was on his way to McAllen on business in connection with the harvesting and shipping of vegetables at the time of the collision.

The train with which Brack collided had moved from west to east, and was standing across the McColl road. The train crew was engaged in picking up cars from a switch or siding to the east of the said crossing. No member of the train crew was at or near the crossing when the collision took place, nor did any of them learn of the collision and death of Brack until the following morning. The caboose and one large yellow, or light colored, box car were standing on the main track just west of the McColl crossing, and attached to said box car, but standing across the paved portion of McColl road, was a low, black or dark colored oil tank car, and just to the east of said paved road and attached to said low oil tank car was another large yellow, or light colored, box car. The balance of the train—some twenty or twenty-five cars—were onto the east, on such main track. The engine and tender had been cut loose from the front of the train, driven still further to the east, and then pulled back on a switch or siding to pick up other cars to place in the train. There was plenty of room on the main track east of the McColl road and yet west of the siding or

switch, where the engine cut out to pick up other cars, for the entire train to stand, which would have left the McColl crossing clear of the train. In other words, if the train crew had pulled the entire train to the east and clear of the said crossing, there was still plenty of room for the engine to pick up the other cars and make up the train. Instead of thus clearing the crossing, as the undisputed evidence shows they could and should have done, they stopped the train across the McColl crossing, leaving a low, black oil tank car immediately across the paved road, and only the one yellow box car and the caboose to the west of the crossing. The engine then cut loose from the front of the train and proceeded east some distance and then cut off on a switch to pick up additional cars.

It is clearly shown that the train was thus unnecessarily left standing across and blocking the McColl road crossing far in excess of the time allowed by law; it seems that the train was left there, in this situation, for twenty to twenty-five minutes. While the train was thus standing across the McColl road, two eyewitnesses to the collision, Scroggins and Dean, drove east down State Highway No. 12, and parallel to the railway track, passed the caboose and the one yellow box car, and turned left and to the north for the purpose of crossing the track and proceeding up the McColl road. They saw the train as it was standing, and thought the crossing was open; that is, while they observed the caboose and the one yellow car to the west of the McColl road and the other yellow cars to the east, they did not see the low, black oil tank car standing immediately across the paved portion of said road until they were within eight or ten feet of it, when they stopped their truck, cut off the engine and the lights, and waited for the train to pull out or open up the crossing. They thus waited several minutes, in any event in excess of five, and then they observed an automobile coming south down the McColl road toward the same crossing, where they waited on the other side of and to the south of the low, black oil tank car, attached to the train as above described. Scroggins stated that he "had a hunch" that the driver of the approaching automobile might run into the train, and that he got out of his waiting truck and stepped up to the train. He could see the automobile between the end of the low, black oil tank car and the attached yellow box car, just west of it, and the lights of the approaching automobile shone through such opening and on to State Highway No. 12, just south of the standing train, and into which the McColl road ran at the crossing. The automobile, as thus driven by Brack, crashed into the wheel of the west end of the low, black oil tank car on the north side, just about the time Scroggins walked up to the south side and opposite the west end of the oil tank car. The impact caused the front wheels of the automobile to bend around or become hooked around the wheel of the oil tank car. Scroggins and Dean went to the rescue of the driver of the automobile. They tried to pull the automobile back away from the oil tank car, and were not able to get it released until the train pulled out in a few minutes. By holding on to the automobile as the train pulled away, Scroggins succeeded in getting the automobile released. Dean, in the meantime, had run up towards the engine of the train to report the collision, but as the train pulled out just before he arrived or could make any of the train employees hear his calls for help, none of the trainmen knew of the collision, it seems, until the next day.

Brack, the driver of the automobile, was fatally injured in the crash, his body crushed, and he died soon thereafter, without regaining consciousness. The lights and brakes on the Ford car he was driving were not shown to be in any way defective. He was shown to have been a careful driver. It seems that the brakes of his car were not applied just prior to the crash; there were no signs on the road showing that he locked his wheels just before he ran into the train. He was driving about thirty-five or forty miles per hour. From all the facts and circumstances it seems to be clearly established that Brack approached the crossing with the belief that it was open; that is, the taller, yellow box cars standing immediately to the east and west of the paved road he was travelling, and the low, black tank car being across the road, and he being able to see Highway No. 12, just south of the train between the west end of the oil car and the east end of the yellow box car, he did not see the black oil car at all, and thought the train had been cut, and the crossing opened in the usual and customary manner, and he proceeded to drive his automobile across the track accordingly, but with the tragic result above stated.

For convenience, the parties will be here designated as they were in the trial court.

The plaintiffs charged the defendant with negligence in three respects: First, that defendant obstructed a crossing more than five minutes, in contravention of the statutes of Texas in such cases; second, the defendant placed said train of cars upon said crossing with a low, dark colored car on the crossing and flanked on both sides by tall, yellow or light colored cars; and failed to post any guards, sentinels, watchmen, or signal men at said crossing to warn approaching motorists; and, third, that defendant failed to place on the north side of said crossing any lights, flares, or other visible signals or warning devices to warn approaching motorists of the obstruction of said crossing.

The defendants L. W. Baldwin and Guy A. Thompson, trustees, were dismissed from the case; and the defendant the St. Louis, Brownsville & Mexico Railway Company first filed its motion to stay all proceedings, on account of the then pending bankruptcy proceedings in the District Court of the United States, Eastern Division, Eastern District of Missouri, which the court overruled.

Defendant filed its answers, alleging that plaintiffs' petition failed to state a cause of action; contending that plaintiffs' petition affirmatively showed that the deceased was guilty of contributory negligence, as a matter of law, for which reason plaintiffs could not recover; and by way of special defenses alleged:

(a) That the deceased failed to keep a proper lookout, which failure was negligence and a proximate cause of the collision in question.

(b) That the deceased drove his automobile immediately prior to the collision at such a rate of speed that he could not stop said automobile within the limits within which obstacles in the road could be distinguished by the lights then being used on said automobile; that such speed was negligence and the proximate cause of the collision in question.

(c) That the deceased drove his automobile towards the railroad crossing, knowing it to be such, at such a rate of speed that he was unable to stop after discovering that the crossing was occupied by a railroad car; that his action in this particular was negligence and a proximate cause of the collision in question.

Upon the conclusion of the testimony, defendant the St. Louis, Brownsville & Mexico Railway Company filed its request for a peremptory instruction, which was overruled.

The court submitted to the jury nine special issues on behalf of the plaintiffs, which such issues were intended to present the three grounds of negligence pleaded by plaintiffs. The court also submitted special issue No. 10, on unavoidable accident, and special issues Nos. 11 to 16, both inclusive, presenting defendant's affirmative defense. Special issue No. 17 was on the measure of damages. The defendant presented to the court its objections to the court's charge, some twenty-two in number, all of which were overruled.

Under appropriate definitions and instructions from the court, the jury answered all special issues in favor of the plaintiffs, finding that:

(a) The blocking of the McColl road crossing for more than five minutes by defendant's standing cars was a proximate cause of the collision between the automobile driven by O. M. Brack and the defendant's tank car.

(b) At the time of the collision in question, the defendant had blocked the McColl road crossing by leaving a dark oil tank car across the road with light colored refrigerator cars on each side of the said oil tank car.

(c) The blocking of said McColl road crossing by leaving a dark oil tank car across the road with light colored refrigerator cars on each side thereof was negligence on the part of defendant; and

(d) Such negligence on the part of the defendant was a proximate cause of the collision in question.

(e) The failure of defendant to have a watchman or a signal light at said McColl road crossing at the time of the collision was negligence of the defendant; and

(f) Such negligence was a proximate cause of the collision.

(g) The collision in question was not an unavoidable accident.

(h) O. M. Brack was not operating his automobile at the time of, or immediately prior to, the collision in question without keeping a proper lookout to ascertain whether or not there was a railroad train then on the crossing where the collision occurred.

(i) O. M. Brack was not operating his automobile in the southerly direction on the north McColl road, immediately prior to the collision in question, at such a rate

of speed that he was unable to stop said automobile within such distance as the lights then on said automobile would enable him to plainly see the tank car upon said road in front of him.

(j) The amount of money which, if paid now, in cash, would reasonably compensate plaintiffs for their damages resulting from the death of O. M. Brack, is —

(1) To the widow, Loula M. Brack, $20,000.

(2) To the minor O. M. Brack, Jr., $2,000.

(3) To the minor Jarrett Brack, $3,000.

(4) To the minor Wesley Joe Brack, $5,000.

The defendant then presented to the court its motion for judgment non obstante veredicto, which was by the court overruled. Judgment was then entered in favor of the plaintiffs for the total sum of $30,000, apportioned between them as found by the jury.

Motion for a new trial filed by defendant was overruled, and defendant through appropriate exceptions and appeal bond presents this case to this court for review.

With frankness and clarity, much appreciated by the court, counsel for appellant concede and state in the able brief filed in this cause that while there are many assignments of error and eight propositions of law asserted by them on this appeal, there are in reality only four questions raised and asserted by them as sufficient to require rendition or reversal of the judgment of the court below.

Such four questions are as follows:

1. Was defendant's motion to stay proceedings well taken?

2. Did either plaintiffs' allegations or proof present a cause of action?

3. Does plaintiffs' petition and the evidence introduced thereunder affirmatively show that the deceased was guilty of contributory negligence as a matter of law?

4. Was the lower court's definition of "proximate cause" subject to the objections directed against it by this defendant?

It is clear from the record here presented that the proper answers to the above questions will determine the appeal.

Defendant contends that the court below erred in refusing to stay the trial of this cause because of the reorganization proceedings then pending on petition of defendant in the United States District Court at St. Louis, as authorized by act of Congress, passed March 3, 1933, as an amendment to the general bankruptcy laws. 11 U.S.C.A. § 205 note. Clearly, such reorganization proceedings were authorized by Congress and availed of by defendant for the purpose allowed by the Congress and sought by defendant, and certainly not for the purpose or to have the effect of denying citizens their legal rights and the privileges accorded them generally, under the Constitution and laws of the states and the Nation. The act of Congress referred to was a "relief act" hurriedly passed for the benefit of corporations and their creditors; to enable them to reorganize, refinance, and reestablish themselves following the ravages and devastating results of the wild riot of speculation which finally brought the people and the industries of the country to grief, financially and otherwise, in 1929. In thus authorizing the great railroad corporations and systems to reorganize and renew and continue their existence and necessary service to the public, it was not the intention of Congress to deny, or unduly delay, the right of an injured party to proceed in an action for tort against a particular railroad corporation, in the ordinary manner provided by law, even though at the time such particular railroad might be engaged with others in a general plan of reorganization. While defendant here contends that its said motion to stay is valid under the general provisions of the law relating to bankruptcy, it relies especially on the provisions of the relief act, or the amendment, above referred to.

Defendant has cited no case which sustains its contention under the new relief act of Congress, and we have not been able to find any to that effect. Furthermore, it is our opinion that the cases cited by defendant, and which it asserts sustain its contention under the general laws, are clearly not applicable to the situation before us in this appeal. Only a debt, claim, or lien which is dischargeable in bankruptcy may be stayed in a proceeding such as here attempted. That is, unless the debt, claim, or lien is of such nature that it is provable in a bankruptcy court, and could in regular order be discharged through the action of said court, then a motion to stay the proceedings to establish the claim should be refused. 11 U.S.C.A. § 205 note; Remington on Bankruptcy, Vol. 2, §§ 766, 767; In re Metz

(C.C.A.) 6 F.(2d) 962; In re Nuttall (D.C.) 201 F. 557; Schall v. Camors, 251 U.S. 239, 246, 40 S.Ct. 135, 64 L.Ed. 247.

This is an action solely in tort, a plain suit for damages in the alleged amount of $100,000, as a result of the death of a husband and father who was killed in a collision with defendant's train in Hidalgo county, Tex. It is certainly not such a claim, or debt, as that without a trial on the merits, it is either provable or dischargeable in an ordinary bankruptcy proceeding. It is also true that the claim or suit is not of such a nature as it could or should be tried in the emergency reorganization bankruptcy proceedings in the federal court in St. Louis, Mo.

Defendant being without authority to stay the trial of this cause in the lower court under any provisions of the general laws relating to bankruptcy, and there being no authority given or existing therefor under the terms of the relief act—the amendment of 1933—it follows that the trial court properly overruled defendant's motion to stay, and defendant's contention here made at such action of the trial court is overruled.

Defendant contends that plaintiffs' allegations and the evidence offered in support thereof fail to present a cause of action, wherefore it complains of the action of the trial court in (a) overruling its general demurrer, (b) refusing its motion for an instructed verdict, and (c) overruling its motion for judgment non obstante veredicto.

We have carefully considered plaintiffs' allegations in this cause, and we think there can be no question that the pleadings stated a cause of action. Certainly, as against a general demurrer, the allegations are sufficient. Furthermore, a review of the evidence offered by plaintiff shows that questions and issues of fact were presented which not only justified, but required the lower court to submit them to the jury, and defendant's motion for a peremptory instruction was properly overruled. When the jury then returned its verdict, finding the issues of fact against the contentions of defendant, and on disputed testimony, the trial court properly entered judgment thereon for plaintiffs, and overruled defendant's motion for judgment non obstante veredicto.

It was and is the contention of defendant that under the pleadings of plaintiff and all the evidence adduced thereunder, it affirmatively appears that the deceased was guilty of contributory negligence, as a matter of law, and for such reason plaintiffs cannot recover any judgment against defendant, without regard to any acts of negligence on the part of defendant at the time of the injury. That is, defendant asserts that under plaintiffs' pleadings and all the facts and circumstances shown on the trial, it is affirmatively established that the deceased negligently drove his car into the train and that such negligence on his part was the proximate cause of the death of deceased, for which reason defendant cannot be held liable for the injuries to plaintiffs, without regard to or in spite of any act of negligence on the part of defendant at the time of or in connection with the injuries to and death of the deceased.

The jury, however, found that the deceased was not guilty of negligence in driving his car into the train, under all the facts and circumstances existing and shown at the time of the injury; but that the acts and conduct of defendant's agents in blocking the road with its train in violation of the statutes, and in the manner of parking or stopping its train across the road with its cars connected, and located as they were, and without any signals or warnings furnished, were the negligent and wrongful acts which caused the injury and death of the deceased. The trial court found, and we sustain its holding, that the pleadings of plaintiff were sufficient to authorize the raising of all the issues presented in this case. The findings of fact by the jury, if supported by the evidence, are therefore binding on this court. As above shown, all questions of fact, as submitted at the request of both parties, were found by the jury in favor of plaintiffs, and against the contentions of defendant. Under this state of the record, and in view of our holding on the other questions above discussed, it is our duty to affirm the judgment of the lower court, unless we can agree with defendant that the record shows the deceased to have been guilty of contributory negligence, as a matter of law, or unless defendant's contention that the trial court erred in its definition of proximate cause, requires a reversal of the case for that reason.

Was the deceased, under all the facts and circumstances shown upon the trial, guilty of contributory negligence as a matter of law, and which precludes any re-

covery on the part of plaintiffs in this cause? Plaintiffs alleged the three grounds or acts of negligence against defendant, and as hereinabove stated. .

First, as to the alleged unlawful blocking of the road in violation of article 787, Penal Code, 1925: It is clearly established, if not undisputed, that defendant violated the provisions of the statute. The train was stopped across and continuously blocked the McColl road for a period of twenty to twenty-five minutes. This road was known to defendant to be a paved road and used extensively by the public, especially by persons engaged, as was the deceased, in harvesting and marketing vegetables in the vicinity. Defendant's agents knew that the road was blocked at the time, and that such blocking in excess of five minutes was a violation of law. There was ample room on the main track, east of the McColl crossing and west of the switch, for the entire train to rest, while the engine pulled off to pick up additional cars from the siding, and if the agents of defendant had exercised the care to have thus cleared the McColl road, the injury would not have occurred. There was no reason or necessity for the stopping of the train across the McColl road. And even if there had been any necessity or reason therefor, and for the time taken, it was the plain duty of defendant to cut the train and open the road. It seems clear from the record before us that if the defendant had exercised ordinary care in either of the two respects mentioned, Brack would not have been killed. It is shown by the evidence that if the train had been cut and the road left open, as the law requires, and under the facts known to defendant at the time of the injury, Brack would have cleared the track before the train pulled out. Evidently he thought the law had been complied with, and the road left open; and he proceeded to drive across the track and between the two yellow box cars disconnected as he thought, with the road open, and standing on either side of the road. However, the fact is established and remains that the defendant knowingly blocked the road in violation of the law. Such act is negligence per se; and if such negligence was the, or a, proximate cause of the injury and death of Brack, as found by the jury, and if Brack was not guilty of such reckless conduct in the driving of his car as to amount to contributory negligence as a matter of law,

then defendant is liable. St. Louis, B. & M. Ry. Co.' v. Price (Tex.Com.App.) 269 S.W. 422, and authorities cited.

Defendant, however, asserts that the unlawful blocking of a public road does not amount to negligence per se, unless the unlawful act be shown to be "willful," and seems to contend that the motive behind the conduct of the actor in such a case must be shown or at least considered along with the unlawful act before such act or conduct can be held to be negligence per se.

Defendant contends, furthermore, that the unlawful blocking of the crossing here in question cannot possibly be held to be a proximate cause of the collision, for the reason that the time or extent of such unlawful blocking was not known to the deceased; that unless the deceased knew that the road had been blocked by defendant, in excess of five minutes prior to or at the time of the injury, then such negligence and unlawful act of defendant could not be held to be a proximate cause of the injury of deceased.

We do not find this to be the correct rule or test in such a case as here under consideration. It seems that the holding in the case of Missouri-Kansas-Texas Ry. Co. v. McLain (Tex.Civ.App.) 74 S.W. (2d) 166, is to the contrary. While the Supreme Court granted a writ in this case, it is not shown that the writ was granted because of any doubt as to the correctness of the holding of the court of civil appeals on the question here involved. As a matter of fact, it appears that the reasons announced by the Court of Civil Appeals in the McLain Case on the issue of the unlawful blocking of a public highway, and as a basis for holding the railroad company liable to an injured party as the result of such act, apply with greater force in this case than in the McLain Case. In that case a third party, a pedestrian, was injured by an automobile when it struck him and knocked him against a freight train, as the result of the driver of the automobile trying to avoid a collision with such train that was then standing across and unlawfully blocking the highway.

It seems to us that the correct test or rule to be applied in this case is not what information or knowledge the injured party had prior to or at the time of the injury, of defendant's acts of negligence, but under all the facts and circumstances, was the defendant in fact negligent, and if

so was such negligence a proximate cause of the injury?

The record clearly shows that defendant's train, at the time of the injury in question, was unlawfully blocking the Mc-Coll road, which unlawful act was, it is true, unknown to the deceased. The motive that may have impelled defendant's agents in the doing of the unlawful act, or the amount of time during which the road was in fact unlawfully blocked, is not a matter of any consequence in this case, other than perhaps to emphasize the unlawful and negligent conduct of the defendant.

As above pointed out, if defendant had complied with the terms of the statute and disconnected its train and opened the crossing at the expiration of five minutes after the same was blocked, the injury would not have occurred. The failure upon the part of defendant to so open the crossing was a violation of the law, and at the same time a violation of a duty which the defendant owed to the deceased, as well as other members of the public who had a right to travel over the road and use the crossing in the customary and lawful manner. As we view the authorities, it is our opinion that such unlawful blocking of the crossing, as the record here shows defendant to have been guilty of, is a willful violation of the statute and is negligence per se. At the very time of the collision, resulting in the injury and consequent death of Brack, defendant was engaged in the performance of an unlawful act, and but for such continuous and unlawful act on the part of defendant the injury would not have occurred.

The jury found that, at the very time the collision resulting in Brack's death occurred, defendant was unlawfully blocking the road and that such unlawful act was the proximate cause of the injuries to and death of the deceased. This finding is based upon conclusive if not undisputed evidence. The fact that the deceased, Brack, at the time of the collision did not know that the crossing had been blocked for a period of five, twenty, or twenty-five minutes is certainly no excuse for the violation of the statute, and the duty owed to Brack and the traveling public by the defendant. Of course, if Brack had known that the road over which he traveled was at the time blocked by the train for any period of time, either lawfully or unlawfully, or if the evidence showed that he knew the train was standing across the road and not disconnected and the road opened, and he carelessly drove into the side of the train, plaintiffs could not recover. Furthermore, if under all the facts and circumstances shown upon the trial, the jury had found that Brack approached the crossing without exercising proper care for his own safety, but that he negligently and recklessly ran his automobile into the side of the train, plaintiffs would have no standing in court. The jury found however, from the evidence, including the testimony of two eyewitnesses to the collision, that Brack actually approached the crossing under the mistaken belief that the road was open, as was usual and customary when a freight train is stopped and standing across a public road and the train crew engaged in picking up other cars from the loading switches in the vicinity. The jury had before them for consideration the testimony of these eyewitnesses, Scroggins and Dean, who testified positively that they, too, as they approached the same crossing, shortly before the car of the deceased drove in from the opposite side, thought that the road was open, and did not discover it was not open until they had driven their truck to a point within six or eight feet from the low, black oil tank car that was standing across the road. Their testimony is to the effect that by reason of the taller and yellow box cars standing, one immediately to the east and one immediately to the west of the road, and the low, black oil tank car in between, they thought also that the crossing was open. From this positive testimony from the witnesses as to the impression they had of the condition of the crossing, and from all the other physical facts and the evidence as was submitted to and considered by the jury, it was not an unreasonable or unnatural conclusion for the jury to reach that the deceased Brack, as he approached the same crossing from the opposite direction, also thought and drove his car down the road in the belief that the crossing was open.

In respect to the other allegations and findings that the blocking of the McColl road in the manner above stated, and the failure of defendant to have a watchman or signal lights at the crossing, were each acts of negligence, under the facts and circumstances shown upon the trial, and were each a proximate cause of the injury, we find that the allegations and evidence support the verdict of the jury in each instance.

As above shown, the defendant charged the deceased with various acts of alleged contributory negligence. All of such charges were contained in special issues requested and submitted to the jury. All of such issues were determined by the jury, in favor of plaintiffs and against the charges and allegations of defendant. The issue of unavoidable accident was found against the contention made by defendant. We find from a careful review of the record that all of the findings of the jury are supported by the evidence.

We find it our duty, therefore, to hold that defendant's contention that the deceased was guilty of contributory negligence as a matter of law, is not sustained.

Defendant earnestly insists that the facts of this case bring it within the rule announced in the following decisions: Thompson v. St. Louis, S. W. Ry. Co. (Tex.Civ.App.) 55 S.W.(2d) 1084; Robinson v. Houston Belt & T. Ry. Co. (Tex. Civ.App.) 23 S.W.(2d) 894; Texas & N. O. Ry. Co. v. Stratton (Tex.Civ.App.) 74 S.W.(2d) 741; Texas & N. O. Ry. Co. v. Stratton (Tex.Civ.App.) 74 S.W.(2d) 746; Texas & N. O. Ry. Co. v. Adams (Tex.Civ.App.) 27 S.W.(2d) 331; Texas Mexican Ry. Co. v. Hoy (Tex.Com.App.) 24 S.W.(2d) 18; Wichita Valley Ry. Co. v. Fite (Tex.Civ.App.) 78 S.W.(2d) 714; Texas & P. Ry. Co. v. Gillette, 125 Tex. 563, 83 S.W.(2d) 307; Kypfer v. Texas & P. Ry. Co. (Tex.Civ.App.) 88 S.W.(2d) 528.

It is our opinion that the facts in each of the above cases are clearly distinguishable from the facts of this case, for which reason the rules there announced do not apply here.

■ The rule is that contributory negligence can exist as a matter of law only when, under all the facts and circumstances shown upon the trial, reasonable minds can reach but one conclusion. That is, when there exists such a state of facts that reasonable minds, when considering them in the light of all the circumstances, can reach different conclusions, then whether there is contributory negligence is a question for the jury. Orange & N. W. Ry. Co. v. Harris (Tex.Civ.App.) 57 S.W.(2d) 931; Beaumont, S. L. & W. Ry. Co. v. Richmond (Tex.Civ.App.) 78 S.W. (2d) 232; Tisdale v. Panhandle & S. F. Ry. Co. (Tex.Com.App.) 228 S.W. 133, 137, 16 A.L.R. 1264; Missouri, K. & T. Ry. Co. v. Long (Tex.Civ.App.) 23 S.W.(2d) 401;

Texas & N. O. Ry. Co. v. Crow, 121 Tex. 346, 48 S.W.(2d) 1106; Barron v. Houston E. & W. T. Ry. Co. (Tex.Com.App.) 249 S.W. 825; Baker v. Hodges (Tex.Civ. App.) 231 S.W. 844.

It is true, of course, that each case of this character must stand upon its own peculiar state of facts. Contributory negligence will not be presumed to exist from the bare fact of accident or injury. On the surface, the conduct of Brack in driving his car into the side of a standing train, as was true in this case, appears to be inexcusable, and to exhibit a complete lack of care on his part for his own safety. It is difficult to conceive of a rational man driving his car up to and then attempt to cross the track between the box cars standing on either side of the road he was traveling, as shown in this case, unless he actually thought and firmly believed that the train had been cut and the road left open, in the usual and customary manner. There is no suggestion in the record that he was in any way incapacitated. He was a careful driver, acquainted with the road and the crossing, and he was engaged in a short business trip at the time of the collision. As above pointed out, the peculiar position of the box cars on either side of the road, the location of a low, dark tank car across the road, and his ability to see the pavement of State Highway No. 12, across the railway track between the west end of the tank car and the box car to the west, and other circumstances shown by the testimony, evidently led Brack to believe that the road was open. The two eyewitnesses to the tragedy testified that they approached the same crossing a short time before thinking the road was open, until they were within a few feet of the dark tank car across their path. The fact that the train had been standing across the road for some time may have been known to Brack; it was a moonlight night; he worked only a short distance from the track; and there were no obstructions as he approached the train. We do not know, of course, just what was in the mind of the deceased as he drove up to the track and into the standing tank car, but it must be presumed, in the absence of any evidence to the contrary, that he was possessed of his ordinary faculties; that he exercised the natural and ordinary caution that a normal man usually exercises for his own safety; and this court, in view of all the evidence, cannot set aside the findings of the jury—based upon all the facts and cir-

cumstances shown upon the trial—that the deceased was not guilty of contributory negligence at the time, under the circumstances and in the manner in which he approached the crossing, and substitute its judgment for that of the twelve impartial jurors who heard and observed all the witnesses, as they testified and considered all the evidence as introduced upon the trial.

We are of the opinion that the facts, testimony, and circumstances relating to the collision in question are such that reasonable minds could arrive at different conclusions as to whether the deceased, under all the facts and circumstances, acted as a person of ordinary prudence and caution would have acted under the same or similar conditions and circumstances. All the issues of alleged contributory negligence, as well as the other issues, were properly submitted to the jury. Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S.W. 139; Mitchum v. Chicago, R. I. & G. Ry. Co., 107 Tex. 34, 173 S.W. 878; Trochta v. Missouri, K. & T. Ry. Co. (Tex.Com. App.) 218 S.W. 1038; Jones v. Louisiana Western Ry. Co. (Tex.Com.App.) 243 S. W. 976; Harrell v. St. Louis & S. W. R. Co. (Tex.Com.App.) 222 S.W. 221; Hines v. Arrant (Tex.Civ.App.) 225 S.W. 767, 768.

■■■ It appears that the crossing where Brack was injured is not such a crossing as required the defendant, under ordinary circumstances, to maintain a regular watchman, or even any special signals to warn travelers on the highway. It is contended by plaintiffs, however, that the use of such crossing by the defendant at the time of the injury, the manner in which the train was left across and blocking the road, the position of the cars in the train, and the violation of the statute in willfully obstructing the road—that all these facts and circumstances for which defendant was responsible—rendered the crossing, at the time of the injury, unusually dangerous, and required defendant, in the exercise of proper care, to post a watchman or furnish an appropriate signal to warn those who might be using the road. It seems to be well established that a railroad crossing, not generally or ordinarily dangerous to the traveling public, may become more than ordinarily dangerous by the conduct of the train operatives, by the use they make of it, or the manner in which they conduct themselves thereat, and in such event they may be held liable

for the failure to exercise extraordinary care or proper means to warn the traveling public against such an extraordinary hazard or danger for which they are responsible. As to whether such a condition has been brought about or exists, at a particular time and place, is a question of fact to be determined from all the facts and circumstances. Missouri, K. & T. Ry. Co. v. Long, supra; Texas & N. O. Ry. Co. v. Crow, supra. The jury found in this case that the conduct of defendant in blocking the road, in the manner and form and for the length of time it did, was negligence—a failure to exercise proper care —and that such negligence was the proximate cause of the injury; and also found that, under all the circumstances, the deceased was not guilty of contributory negligence in any respect; that is, that he acted, under the circumstances, as a man of ordinary prudence would have conducted himself in the same or similar circumstances. The findings of the jury on such questions, under the decisions of our Supreme Court, are binding on this court. Tisdale v. Panhandle & S. F. Ry. Co., supra; Compton v. Texas & N. O. Ry. Co. (Tex.Civ.App.) 96 S.W.(2d) 239. The proper test to be applied in this instance is that set forth by the Supreme Court in the Tisdale Case, supra, as follows: "The sole and only test is whether or not the crossing, in view of its environment and use, was unusually dangerous or attended with more than ordinary hazard at the time of the accident in question. Our views of the law governing this case have been sustained by many other Texas decisions."

The Stratton, Adams, Robinson, Thompson, Fite, and Kypfer Cases, supra, cited by defendant as being identical with the facts of this case, and as authority requiring reversal of the judgment herein, are not, in our opinion, applicable to the questions before us in this appeal. In the Stratton, Thompson, and Robinson Cases, the train in each instance was in operation; moving upon its tracks in the customary manner, and without any charge of violation of the blocking statute, and in each such instance it seems that the injured parties recklessly drove into a moving train. It appears that by the exercise of any care for their own safety the injury would not have occurred. In the Fite Case, the injured party drove his automobile into a single box car standing across the road with nothing on either side to mis-

lead or deceive the driver into the belief that the crossing was open, and with nothing to distract his attention from the obstruction in the road. In the Kypfer Case, the paved highway was at least half open, and Kypfer drove his automobile into the box car situated on that half of the highway which was obstructed, instead of exercising enough care either to stop or to drive over the other half of the highway which was unobstructed. Furthermore, it was found by both the trial and appellate courts that under the circumstances of that case, the crossing was not unusually hazardous. It seems clear that if the condition at the crossing had been found by the trial court to be unusually dangerous or hazardous, as a result of the act of the railway company in blocking the highway, unlawfully or otherwise, it would have been the duty of the train operatives to exercise extraordinary care to warn travelers on the highway of such dangerous condition.

In the Adams Case, the party ran his automobile into an engine of the railroad company at a country crossing while an electric wigwag, equipped with red lights and an electric bell, was in full operation to give him warning. The headlights on the engine and several lights in the cab were burning brightly, and Adams drove his automobile into the side of the engine while it was lawfully on the crossing where the collision occurred.

In the instant case, and as above pointed out, there was no watchman present; no signals in existence; and no warning given while the train was unlawfully blocking a paved highway, and with the tall, light-colored cars on either side of the road, and the low, dark car blocking the road; and there was no attempt made by the railroad employees to advise approaching motorists that the train had not been cut and the road opened, as the law provides in certain instances. Furthermore, the positive testimony by two impartial eyewitnesses to the conduct of the deceased in driving this automobile as he did, into the low, black car thus blocking the highway, is to the effect that they, too, at about that time, in an effort to travel the same road, believed that the train had been cut and the road opened, until they were within a few feet of the tank car against which the deceased drove his automobile on the opposite side. Both such eyewitnesses so testified. It should be remembered also that these eyewitnesses drove parallel to the train and made a sharp turn to the left, a very short distance from the crossing, and that their truck was moving slowly when they made their approach. It is clear that these two men were deceived and misled by the conduct of the train operatives and the location and condition of the equipment across said road. There is nothing, therefore, unnatural or unreasonable in that the jury should have concluded that the deceased had the same impression, from all the facts and circumstances, that such two eyewitnesses had, as a result of the condition and location of the train across the road, and in the absence of any watchman, signal, or warning, that the road was blocked.

Defendant contends that the definition of "proximate cause," as submitted by the trial court was erroneous and misleading, for which reason the judgment herein should be reversed. The definition given is as follows: "Proximate cause is that act or omission, which in a logical sequence unbroken by any new and independent cause produces some event or injury, and but for which such event or injury would not have occurred."

Defendant's objection to such definition is that it omits any element of foreseeability and the theory of anticipation, and cites the cases of Hutton v. Burkett (Tex. Civ.App.) 18 S.W.(2d) 740, and Enterprise Co. v. Alexander (Tex.Civ.App.) 6 S.W.(2d) 423, in support of its contention. It is our opinion that the definition of "proximate cause," as given by the trial court in this case, includes the elements complained of by defendant as being omitted, and that such definition complies with the test applied by our Supreme Court. Seale v. Gulf, C. & S. F. Ry. Co., 65 Tex. 274, 57 Am.Rep. 602; Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162; San Antonio & A. P. Ry. Co. v. Behne (Tex.Com.App.) 231 S.W. 354. The confusion suggested by defendant, as to the meaning of the terms used in the wording of the definition complained of, is more apparent than real, and does not, in our opinion, exist when the language used is given its reasonable interpretation and proper construction. When tested by the rules announced by our Supreme Court, and discussed at length in the Behne Case, supra, we think the definition, as given in this case, is sufficient, and defendant's contention is overruled.

After a careful study of the entire record in this cause and special consideration

of the contentions urged by appellant, we have concluded that the judgment of the trial court should be affirmed, and it is so ordered.

### On Motion for Rehearing.

After more thorough consideration, and an exhaustive study of the motion for rehearing, we have concluded that we were in error, in the original disposition of this cause, in approving of the trial court's definition of "proximate cause," as applied to the facts of this case. That definition was as follows: "Proximate cause is that act or omission, which in a logical sequence unbroken by any new and independent cause produces some event or injury, and but for which such event or injury would not have occurred."

Appellant duly objected to this definition upon the ground that it did not include the element of foreseeableness, or reasonable anticipation, and requested a special charge embracing that element, which the trial court refused. The question was carefully and definitely raised and properly preserved below by appellant, and is ably and vigorously presented here.

The question appears to be no longer open in this state, the courts now universally holding that foreseeableness is an essential element of proximate cause in personal injury actions, and must be expressly included in the definition of proximate cause in such actions. Speer's Law of Special Issues, § 80; Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162; Seale v. Gulf, C. & S. F. Ry. Co., 65 Tex. 274, 57 Am.Rep. 602; St. Louis, S. F. & T. Ry. Co. v. Green (Tex.Com.App.) 37 S.W.(2d) 123; Paris & G. N. Ry. Co. v. Stafford (Tex.Com.App.) 53 S.W.(2d) 1019; Enterprise Co. v. Alexander (Tex. Civ.App.) 6 S.W.(2d) 423; Texas Utilities Co. v. West (Tex.Civ.App.) 59 S.W.(2d) 459; Union Stockyards v. Peeler (Tex. Com.App.) 37 S.W.(2d) 126; Hutton v. Burkett (Tex.Civ.App. writ ref.) 18 S.W. (2d) 740; Butler v. Herring (Tex.Civ. App.) 34 S.W.(2d) 307; Turner v. Stoker (Tex.Civ.App. writ ref.) 289 S.W. 190.

Definitions of "proximate cause," which omit the element of foreseeableness, such as that given in the court below, and complained of in this case, seem never to have been finally approved in this state, as against the objection as here raised. On the other hand, definitions identical in substance and effect with that given in the court below in this case have been expressly condemned, because of the omission of the element of foreseeableness or anticipation, in the following cases cited above: St. Louis, S. F. & T. Ry. Co. v. Green; Hutton v. Burkett; Butler v. Herring; Enterprise Co. v. Alexander; Turner v. Stoker.

In their presentation of this case appellees relied, primarily, upon the case of San Antonio & A. P. Ry. Co. v. Behne (Tex.Com.App.) 231 S.W. 354, and, secondarily, upon the case of Seale v. Gulf, C. & S. F. Ry. Co., 65 Tex. 274, 57 Am.Rep. 602, and Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162, 164, which were cited by the Commission of Appeals in the Behne Case.

Upon proper analysis, the Behne Case is not deemed authoritative, while the Seale and Bigham Cases appear to be against, rather than in support of, appellees' contentions. In the first place, it is observed that the very definition of "proximate cause" given by the trial judge in the Behne Case, and approved by the Commission of Appeals, expressly included foreseeableness as a necessary element of proximate cause. (Tex.Civ.App.) 198 S. W. 680. It is true that in the opinion in the Behne Case it was argued that "probable and natural ·result"—or "logical sequence" as used in the definition in this case—meant the same as reasonable foreseeableness, and that the inclusion of the one encompassed the other in a definition of proximate cause. But· this statement, as well as the interesting elaboration thereof in that opinion, seems to have been quite beside the decisive question in the case, and was therefore apparently .dictum, and not authoritative. The language, or dictum, used in that particular does not appear to have been followed or approved in any authoritative case which has come to our attention.

Moreover, the very authorities (Seale and Bigham Cases) cited in support of the dictum in the Behne Case, do not, in our opinion after thorough analysis, support the assertion in the latter case that the phrase, "natural and probable result," means the same thing as foreseeableness, or reasonable anticipation. On the contrary, it seems that by necessary implication from expressions frequently used in the Seale and Bigham Cases, the holdings there are against the dictum of the Behne Case. It was said by Chief Justice Gaines in the Bigham Case, for instance that·"the question of *probable cause* ought to depend upon

the *further* question whether a reasonably prudent man, in view of all the facts, would have *anticipated* the result." (Italics ours.) In the Seale Case Chief Justice Willie said, that (italics ours) : "When a defendant has violated a duty imposed upon him by the common law, he should be held liable to every person injured, whose injury is the *natural and probable consequence* of the misconduct; *and* that the liability extends to such injuries as *might reasonably have been anticipated,* under ordinary circumstances, as the natural and probable result of the wrongful act." And again, after citing other cases: "In each case the new agencies contributing to the injury were such *as would reasonably arise, and* should have been *anticipated* by the parties committing the original wrongful act." We think the effect of the quoted language of Chief Justice Willie is that, under the rule of proximate cause, the liability of the wrongdoer for injury to another depends upon two distinct contingencies: First, upon whether the injury was a natural and probable result of the wrongful act; and, second, whether such injury might reasonably have been foreseen, or anticipated, under ordinary circumstances, as such natural and probable result. It is to be assumed that if such a profound scholar and jurist as Chief Justice Willie had regarded natural and probable result on the one hand, and reasonable anticipation on the other, as meaning one and the same thing in law, he would not have committed the tautological error of naming the two identical elements separately, and linking them together by the conjunction "and." He would not have said an object is "white" and "white."

The same may be said of Chief Justice Gaines in the Bigham Case. He quotes, with approval, the definition of "proximate cause" given by the Supreme Court of the United States, as follows (italics ours) : "But it is generally held that, in order to warrant a finding that negligence or an act not amounting to wanton wrong is the proximate cause of an injury, it must appear that the injury was the *natural and probable consequence* of the negligence or wrongful act, and that it ought to have been *foreseen* in the light of the attending circumstances." Milwaukee & St. P. Ry. Co. v. Kellogg, 94 U.S. 469, 24 L.Ed. 256. And Chief Justice Gaines added that: "This is probably as accurate a statement of the doctrine as can be given, and is substantially that generally laid down by the authorities. * * * It follows that, in our opinion, the question of *probable cause* ought to depend upon the further question whether a reasonably prudent man, in view of all the facts, would have *anticipated* the result."

In view of the high authorities cited, and of the uniformity of the holding that it is reversible error for a trial court to omit the element of anticipation, or foreseeability, from a definition of proximate cause in cases of this character, we have no other recourse or desire than to follow the decisions of our highest courts and declare the error in this case, and reverse the judgment.

It should be added here that there is serious doubt among some members of this court as to whether the record shows contributory negligence upon the part of the decedent, as well as upon the questions of findings relating to the alleged wilful blocking of the highway by appellant. In view of another trial, however, those questions should and will be left open, without further discussion here.

Because of the error in the definition of proximate cause, appellant's motion for rehearing must be granted, and the judgment of the trial court reversed and the cause remanded, and it is so ordered.