### TEXAS & N. O. R. CO. v. BROOK.
### No. 3377.

Court of Civil Appeals of Texas. Beaumont.
April 28, 1939.

Rehearing Denied May 3, 1939.

Baker Botts, Andrews & Wharton and Roy L. Arterbury, all of Houston, and Sanders & McLeroy, of Center, for appellant.

Davis, Avery & Wallace, of Center, and Jones & Jones, of Marshall, for appellee.

O'QUINN, Justice.

This is a suit by Louise Brook, a minor girl nineteen years of age, by her father, W. H. Brook, as next friend, to recover damages for personal injuries growing out of a collision between a truck in which she was riding, driven by her brother, Jack Brook, and a freight train at a public crossing on appellant's track some three miles west of the town of Joaquin, Shelby County, Texas, on July 11, 1937. The collision occurred at about 12:30 P. M. Appellant Louise Brook, and Miss Billie Jean Cole, about fifteen years of age, was riding with Jack Brook, brother of Louise Brook, in a small Ford V–8 pickup truck. They were travelling west on Highway 35 which runs parallel with appellant's railway track. The crossing where the collision occurred was about three miles west of Joaquin, and the public highway crossed the track at right angles. When the truck approached the point of the crossing it turned to the right at right angles on the gravelled highway travelling about 20 to 25 miles per hour. Just before turning from Highway 35 the driver Jack Brook slowed the truck down to 10 or 12 miles per hour and continued to slow down as he approached the crossing a distance of some 60 feet from Highway 35. Just as the truck drove on the crossing it was struck by appellant's freight train approaching from the west (on the left of the truck), and Jack Brook, the driver of the truck, was killed, Miss. Louise Brook seriously injured, and Miss. Billie Jean Cole received injuries also. The truck was demolished. Just before and at the time of the collision the wind was blowing and a heavy summer rain was falling. The window on the left side of the

truck was up to shut out the rain, and the one on the right or opposite side was open. The rain striking the left window of the truck and running down over the glass blurred and obscured the view from that window.

The case was tried to a jury upon special issues, in answer to which they found:

(a) That the operatives of the train failed to blow the whistle on the engine at a distance of at least 1320 feet (80 rods) from the crossing, and that the failure to blow the whistle was a proximate cause of the collision and the injury to appellee Louise Brook;

(b) That the operatives of the train failed to ring the bell on the locomotive engine at a distance of at least 1320 feet (80 rods) from the crossing, and keep such bell ringing until the locomotive crossed said crossing, and that the failure to ring the bell was a proximate cause of the injuries to appellee Louise Brook;

(c) That the operatives of the train failed to give a proper warning as the train approached the crossing, and that such failure was negligence, and that such negligence was a proximate cause of the injuries to appellee Louise Brook;

(d) That the operators of the train failed to keep a proper lookout as the train approached the crossing, and that such failure to keep a proper lookout was negligence, and such negligence was a proximate cause of the injuries to appellee Louise Brook;

(e) That the action of the operators of the train in propelling the train onto and over the crossing at the rate of speed it was so moving was negligence, and that such negligence was a proximate cause of the injuries to appellee Louise Brook;

(f) That the injuries to appellee Louise Brook were not the result of an unavoidable accident;

(g) That as the driver of the truck approached the crossing on the track a hard blowing rain was falling, and that the view of the driver of the truck to his left was obscured by such rain, but that it was not negligence on the part of the driver to drive upon the crossing with his view so obscured;

(h) Answered all issues relating to contributory negligence on the part of the driver of the truck, and on part of appellee Louise Brook, in the negative. Acquitted them of contributory negligence.

(i) Awarded appellee Louise Brook damages in the sum of $12,500.

Judgment was accordingly entered and appellant brings this appeal.

There is no assignment against the correctness of the charge of the court, nor as to the sufficiency of the evidence to support the findings of the jury. The assignments, in the main, complain that the court erred in refusing appellant an instructed verdict. This contention is based upon the assertion that the driver of the truck in driving upon the crossing, under the circumstances shown, was guilty of contributory negligence as a matter of law.

 In its first three propositions, appellant insists that the court erred in submitting the case to the jury because, it says, the evidence conclusively showed that the occupants of the truck, including appellee Louise Brook, were guilty of such negligence proximately resulting in the collision as to preclude the right to recover, in that the jury's answer to special issues to the effect that a hard blowing rain was falling as the truck was driven onto the track and that such hard blowing rain obscured the view of the driver to his left as he drove toward the track, which findings showed contributory negligence as a matter of law preventing recovery. We overrule these contentions. Contributory negligence ordinarily is a question of fact for the jury. But when the evidence is such that but one conclusion can reasonably be drawn from it, then the question is one of law for the court. We have set out practically all of the material facts above, and we do not believe it can be said that but one reasonable conclusion can be drawn from them. It is undisputed that the truck was being driven at not more than 20 or 25 miles per hour while coming down Highway 35 parallel with the railway track, and that when it neared the point where it was to turn to cross the track it slowed down to 10 or 12 miles per hour and continued to slow down, as estimated by some, to 5 or 6 miles, as it approached the crossing. Whether the driver, Jack Brook, was negligent in putting the left window of the truck up to shut out the rain, the other window on the right remaining open, and continue driving toward and upon the crosssing while the wind blew and the rail fell, under all the circumstances, was for the jury to say. The test was whether in so doing he acted as an ordinarily prudent person would have.

done under the circumstances, and this was for the jury, and they determined that he did. Trochta v. Missouri, K. & T. Ry. Co., Tex.Com.App., 218 S.W. 1038; Galveston, H. & S. A. Ry. Co. v. Wells, 121 Tex. 310, 50 S.W.2d 247; Texas & N. O. Ry. Co. v. Crow, 121 Tex. 346, 48 S. W.2d 1106; Rio Grande, E. P. & S. F. Railway Co. v. Dupree, Tex.Com.App., 55 S.W.2d 522; Texas & P. Railway Co. v. Gillette, 125 Tex. 563, 83 S.W.2d 307; Quanah, A. & P. Railway Co. v. Eblen, Tex.Civ.App., 87 S.W.2d 540, writ refused; St. Louis, B. & M. Railway Co. v. Brack, Tex.Civ.App., 102 S.W.2d 261; Texas & P. Ry. Co. v. Gillette, 125 Tex. 563, 83 S.W.2d 307.

Appellant cites us to Texas & N. O. Railway v. Stratton, Tex.Civ.App., 74 S.W. 2d 741; Robinson v. Houston Belt & Term. Ry. Co., Tex.Civ.App., 23 S.W. 2d 894; Texas Mexican Ry. Co. v. Hoy, Tex.Com.App., 24 S.W.2d 18; Thompson v. Railway Co., Tex.Civ.App., 55 S.W.2d 1084, and other cases on similar facts, as announcing the correct rule to be applied in the instant case. The authorities cited by us are not in conflict with the holdings in the cases cited by appellant. There is a well recognized distinction on the facts. In the Stratton case the injured party ran into the center of an eight-car train on the track. In the Robinson case the injured motorcycle operator running his machine 20 miles an hour in the dark ran into train. In the Hoy case the injured party drove his automobile against a tank car standing on the railroad crossing on a dark rainy night the crossing being on one of the principal streets in the City of Laredo. In the Thompson case the driver of an automobile overturned his car in endeavoring to avoid train on track which was either standing still or slowly moving. No such state of facts existed here. The contention is made that Jack Brook, the driver of the truck, took no precaution whatever for his safety or the safety of the girls riding in his truck, and so, under the authorities cited by appellant there was no right to recover. The undisputed facts show this not true. When approaching the point to turn off of Highway 35 to go upon the crossing, he stated to the girls in the truck that he was going to reduce his speed (he was going 20 to 25 miles) as it was raining and the ground was slippery and that he did slow down to 10 or 12 miles per hour, and after turning from Highway 35 and while proceeding toward the crossing on the gravelled road, he further slowed to 5 or 6 miles and at that rate of speed continued to approach the crossing, and was struck by a 38 car (19 emptys and 19 loaded) freight train as he was upon the crossing. The line of authorities cited by appellant are not applicable under the facts.

But appellant says that under the facts, putting up the left window, it being on the side from which the train was coming, to shut out the rain, the hard blowing rain falling on the top of the truck and the water running down the glass window, was "just the same it would be had the occupants of the car tied blindfolds over their eyes back at the point where the heavy rain began to fall and the wind began to blow, and had they proceeded thus blindfolded toward and upon the railroad track." Rather overdrawn comparison, we think, and not in point under the undisputed facts. Moreover, if the bell had been ringing as required by law until it reached the crossing, it is practically certain that some of the occupants of the truck could and would have heard it before reaching the crossing, and considering the slow speed of the truck, 5 or 6 miles per hour, it could have been stopped within less than 10 feet of the crossing and thus have avoided the collision. The jury found that the whistle was not sounded, nor was the bell rung as required by law. The condition of the weather was as well known to those operating the train, as to the operator of the truck. Nothing was done to inform the occupants of the truck that a train was approaching.

Appellant's fourth and fifth propositions insist that the court erred in submitting to the jury issues as to the failure of the operatives of the train to sound the whistle and to start the bell to ringing at a distance of 1320 feet from the crossing and says that if the whistle had been blown and the bell rung, the conditions of the weather were such that the occupants of the truck could not have heard the whistle nor the bell. This was no excuse for the failure to perform the duty imposed by law to give the signals. There is evidence in the record that under identical conditions the blowing of the whistle had been heard for more than one half mile. In any event the persons in the truck were entitled to a chance at hearing them. The jury found that neither the

whistle was blown nor the bell rung, and these findings have ample support in the record.

■ What we have said disposes of the sixth and seventh assignments.

There was no error in submitting to the jury the special issue as to whether the operatives of the train kept a proper outlook in approaching the crossing. The issue was raised by the pleadings and the evidence, and the finding by the jury that such outlook was not kept is supported by the record.

■ Propositions nine and ten complain that the court erred in submitting to the jury the following special issue: "Do you find from a preponderance of the evidence that the action of the operators of the train in question in propelling the same onto and upon the crossing in question at the rate of speed such train was moving was negligence?"

Appellee alleged that the operators of the train negligently and carelessly propelled the train onto and upon the crossing at a high and excessive rate of speed, under the circumstances existing, the visibility being poor, such that the train could not be stopped within the range of the vision of said operatives, and that said operatives of the train negligently and carelessly operated said train in excess of 45 miles per hour which was a proximate cause of the collision. This issue was given in response to said pleading and the evidence relative thereto. The rate of the speed of the train was estimated by witnesses from 30 miles per hour to 50 miles per hour. The contention is that it was error to submit any issue as to whether the operation of the train at any given speed was a proximate cause of the accident; that there was no testimony in any way related to the speed of the train to the actual cause of the collision. We overrule the contention. It being alleged that the train was negligently and carelessly propelled onto and upon the crossing at an excessive rate of speed and that this negligence was a proximate cause of the collision, and the witnesses estimating the rate of speed at from 30 to 50 miles per hour, the issue was proper. Furthermore, the evidence showing that the speed of the train was not lessened before reaching the crossing, and that the truck was upon the crossing when struck, if the train had been travelling at a slower rate of

speed or had the speed been slacked before reaching the crossing, the collision would not have occurred. The truck was almost over the crossing—a minute, or even a few seconds more time and it would have been safely over—the excessive speed, it seems to us, was the major cause of the collision.

No error appearing, the judgment is affirmed.